**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**WANDA GRIGSBY**                                                              **PLAINTIFF**

**v.**                                        **No. 4:19-cv-00778-LPR**

**PULASKI COUNTY SPECIAL SCHOOL DISTRICT**                          **DEFENDANT**

**MEMORANDUM BRIEF IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This Memorandum Brief is submitted in support of the Motion for Summary Judgment ("Motion") filed by Defendant, Pulaski County Special School District ("PCSSD" or "District"), pursuant to Rule 56 of the Federal Rules of Civil Procedure.   For the reasons discussed herein, the District is entitled to summary judgment as a matter of law.

## I.      INTRODUCTION AND FACTUAL BACKGROUND

This is an employment discrimination case under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.   Wanda Grigsby ("Plaintiff") claims in her Amended Complaint that the District retaliated against her by requiring her to complete work assignments that were "not needed" and being placed in view of her supervisors.   *See* Amd. Compl., ECF Doc. No. 15 at ¶¶ 31 and 33.   Grigsby also claims that she was discriminated against and not selected for her desired position in the hiring process because of her sex, female.   *Id*. at 28.   Finally, Grigsby claims she was denied the facilitator position on account of her perceived disability, in violation of the ADA.   *Id*. at 29.

Grigsby filed the operative Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 20, 2018 and filed her initial Complaint on November 4, 2019.   She filed her Amended Complaint on September 9, 2020. ECF Doc. No. 15.

Grigsby began working as a temporary employee for the District in 2012 and became a full-time employed security officer in 2014 in the District's Security Department.   *See* Security Guard Contract 2014, attached to District's Motion as <u>Exhibit 1</u>.   In July of 2015, Grigsby was promoted to security training officer.   *See* Safety & Security Training Officer Contract 2015, attached to District's Motion as <u>Exhibit 2</u>.   In April of 2017, Grigsby was informed that her position of training officer was subject to a non-renewal as part of a District-wide reduction in force ("RIF").   *See* Amd. Compl. at ¶ 7; *see also* Administrative Sergeant Contract 2017, attached to District's Motion as <u>Exhibit 3</u>.   Under the RIF policy, Grigsby had recall rights to any position of equal or lesser status, and she accepted the position of administrative sergeant and went under a new contract as of July 1, 2017.   *See* Reduction in Force Policy, attached to District's Motion as <u>Exhibit 4</u>; *see also* Exs. 2 and 3.   Grigsby went from daily to hourly pay and transitioned from making $67,071.00 per year to $50,068.80 per year.

The basis of Grigsby's ADA claim stems from an injury that she incurred while working for the District.   In May of 2017, Grigsby filed a worker's compensation claim related to this on-the-job injury. *See* Workers' Compensation Notice of Injury, attached to District's Motion as <u>Exhibit 5</u>.   She claimed that a physical training dummy fell on her right arm and caused injury, the claim was accepted, and she received the appropriate compensation for the injury and remained employed with the District.   *Id.*; *see also* Amd. Compl. at ¶ 8; *see also* Plaintiff's Deposition at p. 20, attached to District's Motion as <u>Exhibit 6</u>.

In April of 2018, Grigsby filed a charge of discrimination with the EEOC alleging her supervisor at the time, Bennie Bowers, sexually harassed her.   *See* Amd. Compl. at ¶ 12; *see also* EEOC Charge, April 2018, attached to District's Motion as <u>Exhibit 7(a)</u>.   This charge was resolved through EEOC mediation and Grigsby remained employed at the District.   *See* Amd.

Compl. at ¶¶ 12-14.   Mr. Bowers did not return as her supervisor and David Thomas became her new supervisor at this time.   *Id*.; *see also* EEOC Charge December 2018, attached to District's Motion as <u>Exhibit 7(b)</u>.   Grigsby alleges the April 2018 Charge, which was satisfactorily resolved, led to retaliatory and discriminatory actions by the District, specifically through David Thomas.   *See* Amd. Compl. at ¶¶ 16-19; *see also* <u>Ex. 7(b).</u>

In May 2018, the District informed Grigsby it planned to non-renew three positions above Grigsby's position of Administrative Sergeant as part of a restructuring of the security department, to be effective June 30, 2018, the end of the District's contract year.   *See* Ex. 6 at p. 50-53. Those three positions were two "coordinators" and a "director," to be replaced with two positions titled "facilitators."   *See Id*.; *See* Chart below.   Grigsby applied for the newly titled facilitator position on June 5, 2018.   *See* Application for Facilitator, attached to District's Motion as <u>Exhibit 8</u>.   At the same time, Grigsby was attempting to get "one arm duty" clearance for her current position at the District, as she was still on modified duty from her on-the-job injury.   *See* Workers' Compensation Adjuster Email, attached to District's Motion as <u>Exhibit 9</u>.   Plaintiff was applying for a significant promotion, which came with increased job responsibilities, while maintaining that she could not do any physical tasks, like type.   *See* <u>Ex. 7(b).</u>

In August 2018, the District hired one facilitator, Dave Thomas, as part of the security department restructuring, as Thomas had held one of the department's senior positions which was non-renewed.   *See* Ex. 6 at p. 51-53; *see also* Facilitator Job Description, attached to District's Motion as <u>Exhibit 10</u>; *see also* Amd. Compl. at ¶ 21.   Thomas's acceptance of the position of facilitator resulted in a roughly $20,000.00 reduction in his salary.   *See* David Thomas Coordinator Contract 2017, attached to District's Motion as <u>Exhibit 11</u>; *see also* Wanda Grigsby Administrative Sergeant Contract, attached to District's Motion as <u>Exhibit 3</u>; *see also* Pulaski

County Special School District Employee Contract Salaries, attached to District's Motion as Exhibit 12.   Thomas was essentially demoted, but he accepted the position to remain employed.

### SECURITY DEPARTMENT HIERARCHY



See Exs. 11, 3 and 12.

Grigsby makes the following claims in her Amended Complaint: her new supervisor, Dave Thomas, who was already her supervisor prior to the creation of the facilitator position in the Fall of 2018, mocked her and retaliated against her by requiring her to type documents in the fall of 2018; she was discriminated against in the hiring process for the facilitator position because of her

sex, female; and prior to Thomas being hired as the facilitator, he was allowed to drive District vehicles—a luxury Grigsby was not permitted.

The District has denied all these related allegations.   Grigsby was not hired for the facilitator position because she was less qualified than the other candidates who also applied for the position.   Grigsby scored as the third highest ranked candidate in the interview process.   *See* Interview Memorandum and Scoring Sheet, attached to District's Motion as <u>Exhibit 13</u>. Additionally, Grigsby's honesty and reliability had been called into question after a Doctor notified the District that Grigsby was putting forth an unreliable effort in physical examinations.   *See* Martin Orthopedics Report, attached to District's Motion as <u>Exhibit 14</u>.   The District had reason to believe Grigsby was manipulating her medical examinations to limit her work exposure.   *Id*. The District has adamantly denied that Grigsby was retaliated against or discriminated against in violation of Title VII of the Civil Rights Act of 1964, or the Americans with Disabilities Act of 1990.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a court may grant summary judgment if the moving party has established its right to a judgment with such clarity as to leave no room for controversy, and the non-moving party is not entitled to recover under any discernable circumstances.   *See LeCroy v. Dean Witter Reynolds, Inc.*, 585 F. Supp. 753 (D.C. Ark. 1984).

Rule 56(c) of the Federal Rules of Civil Procedure provides that:

> the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

When the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, then there is no genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."). The non-moving party may not rest on mere allegations or denials of his pleading but must come forward with specific facts showing a genuine issue for trial. *Id*. at 587. "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co*., 49 F.3d 399, 401 (8th Cir. 1995).

## III.   ARGUMENT AND AUTHORITY

### A.  Title VII Standard

In 1964, Congress enacted Title VII of the Civil Rights Act in an effort to eliminate the entire spectrum of disparate treatment of men and women in the workplace. *Tenge v. Phillips Modern Ag Co.*, 446 F.3d 903, 907 (8th Cir. 2006). In effect, Title VII works to prohibit unlawful discrimination and retaliation practices by employers in the workplace. 42 U.S.C. § 2000e2(a). Title VII discrimination claims are analyzed under the familiar burden-shifting framework set out in the *McDonnell Douglas* line of cases. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-08, 113 S. Ct. 2742, 2746-48, 125 L. Ed. 2d 407 (1993); *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 713-715, 103 S. Ct. 1478, 1480-82, 75 L. Ed. 2d 403 (1983); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-256, 101 S. Ct. 1089, 1093-95, 67 L. Ed. 2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L.

Ed. 2d 668 (1973).   A case alleging a Title VII violation moves through three phases.   *McCosh v. City of Grand Forks*, 628 F.2d 1058, 1062 (8th Cir. 1980).

"First, the Plaintiff bears the burden of proving by a preponderance of the evidence a prima facie case of discrimination." *Texas Dep't of Cmty. Affairs*, 450 U.S. at 252-53.   A plaintiff may carry this burden in one of two ways: (1) by offering direct evidence of the alleged discriminatory motive or action; or (2) by producing sufficient evidence to support an inference that the defendant employer based its employment decision on an illegal criterion.   *Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285, 290 (8th Cir. 1982) (citing *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 (1978)).   If a plaintiff is unable to present direct evidence of an employer's alleged discriminatory behavior, she can raise an inference of such conduct using the framework articulated in *McDonnell Douglas*. *Texas Dep't of Cmty. Affairs*, 450 U.S. at 253.

In a failure-to-hire context, Plaintiff may establish a prima facie case of discrimination if she demonstrates that: (1) she is a member of a protected class; (2) she was qualified for the position for which the employer was accepting applications; (3) she was denied the position; and (4) the employer hired someone from outside the protected class.   *Arraleh v. Cty. Of Ramsey*, 461 F.3d 967, 975 (8th Cir. 2006) (citing *Kobrin v. Univ. of Minn.*, 34 F.3d 698, 702 (8th Cir. 1994)).

To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that (1) she engaged in protected conduct; (2) she suffered a materially adverse employment act; and (3) the adverse act was causally linked to the conduct.   *Du Bois v. Bd. of Regents of the Univ. of Minn., No. 20-1544*, 2021 U.S. App. LEXIS 4263, at *1 (8th Cir. Feb. 16, 2021)

Should the plaintiff succeed in making a prima facie case, the burden shifts to the defendant employer to submit evidence demonstrating that the plaintiff was rejected, or that someone else was preferred, for a legitimate nondiscriminatory reason. *Texas Dep't of Cmty. Affairs*, 450 U.S.

at 254. "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Id*. at 255. This burden is not onerous and need not be demonstrated by a preponderance of the evidence. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011) (quoting *Floyd v. State of Mo. Dep't of Soc. Servs., Div. of Family Servs.*, 188 F.3d 932, 936 (8th Cir. 1999)).

If the defendant successfully rebuts the presumption of discrimination, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were instead a pretext for discrimination. *Texas Dep't of Cmty. Affairs*, 450 U.S. at 256. To do so, the plaintiff must either: (1) persuade the court that a discriminatory reason more likely motivated the employer, or (2) show that the employer's proffered explanation is unworthy of credence. *Id*. (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. at 804-805). The plaintiff must provide evidence that does more than raise doubts about the wisdom and fairness of the employer's actions; instead, she must create a real question as to the genuineness of the employer's perceptions and beliefs. *Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799, 806 (8th Cir. 2019) (quoting *Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1118 (8th Cir. 2018)). A plaintiff can only succeed at this stage if she presents sufficient evidence to demonstrate *both* that the employer's articulated reason for the adverse employment action was false, *and* that discrimination was the real reason. *Wilking v. Cnty. of Ramsey*, 153 F.3d 869, 874 (8th Cir. 1998) (quoting *Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1072 (8th Cir. 1998)). Finally, "the ultimate burden of persuading the trier of fact that a defendant intentionally discriminated against a plaintiff remains at all times with the plaintiff." *Id.* (citing *Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 25 (1978)).

1. **Title VII Argument**

   a. **Grigsby Cannot Make a Prima Facie Retaliation Claim Under Title VII Because the Adverse Employment Action Does Not is Causally Relate to the Protected Conduct.**

Grigsby cannot produce direct evidence of discrimination but can likely make a prima facie showing under the failure-to-hire context of Title VII, as she was a member of a protected class (female), she was at least minimally qualified for the position to which she applied, she was denied the position, and the prevailing candidate was outside the protected class (here, Dave Thomas, a male). *Arrelah*, 461 F.3d at 975. However, Grigsby cannot make a prima facie case under the Title VII retaliation standard.

Under a Title VII retaliation claim, the adverse employment action must be causally linked to the plaintiff's protected conduct. *Du Bois v. Bd. of Regents of the Univ. of Minn., No. 20-1544*, 2021 U.S. App. LEXIS 4263, at *1 (8th Cir. Feb. 16, 2021). An inference of retaliatory motive may be supported by evidence that the defendant was aware of protected activity and that the date of the adverse employment action closely followed such activity. *See Rath v. Selection Research, Inc.*, 978 F.2d 1087, 1090 (8th Cir. 1992); *Keys v. Lutheran Family and Children's Services*, 668 F.2d 356, 358 (8th Cir. 1981); and *Nelson v. J.C. Penney Co.*, 75 F.3d 343, 346-47 (8th Cir. 1996).

"Adverse employment action" is defined under 38 U.S.C.S. 4311 as a tangible change in working conditions that produces a material employment disadvantage such as termination, cuts in pay or benefits, or changes that affect an employee's future career prospects, but not minor changes in duties or working conditions, even unpalatable or unwelcome ones. *Lisdahl v. Mayo Found.*, 633 F.3d 712, 715 (8th Cir. 2011). Temporal proximity alone can be sufficient to create an inference of a causal link, but the temporal proximity must be very close. *Wallace v. Sparks*

*Health Sys.*, 415 F.3d 853, 855 (8th Cir. 2005).   The Eighth Circuit has stated that "nearly a year…is insufficient to show, and in fact weakens the showing of, the required causal link."   *Id.* at 859.

While failing to promote can be considered an adverse employment action, when the District's circumstances are taken as a whole, it is obvious that there is no causal relation between the "adverse employment action" and the protected conduct.   First, the District's decision to not promote the Grigsby was objective in nature.   The District had two other duly qualified candidates interviewing for the position, both were Grigsby's superiors—the same individuals that held the positions that were replaced with the facilitator positions.   This information plays strongest toward a non-discriminatory reason, and counters strongest against pretext, but is also helpful in the context of causal connection.

Grigsby claims that she was retaliated against "by having work assigned to her" that was "designed to punish" her were neither adverse nor is the temporal proximity adequate.   *See* Amd. Compl. at ¶ 31.   Grigsby provides no support or examples for these assertions short of the fact that she was forced to "perform unnecessary typing" and duties that her supervisor knew would cause further injury.   *Id.* at ¶¶ 18 and 19.   The only specifically named activity Grigsby claims to have been forced to do is type on a computer.   *Id.*   It is difficult to imagine a retaliation case built on an employee being asked to do something as simple as pushing buttons.   Grigsby was in a support staff role and a review of her job description makes clear that use of a computer and typing was an essential job function.   *See* Ex. 16.   If Grigsby could not push buttons, then she certainly would not be able to perform her essential job functions, no matter the accommodations given.   Grigsby provides no evidence that she was medically unable to type (an essential function of her job) or that other employees were not required to perform typing.   And Grigsby provides

10

no link as to how her having to type resulted in any adverse employment action that is actionable under Title VII.   Here, Grigsby fails to present either an adverse job action or temporal proximity.

Grigsby submitted her EEOC complaint in April of 2018 and it was resolved in June.   *See* Amd. Compl. at ¶¶ 12-14. The District eliminated three security positions (all above Grigsby's position) in May of 2018, began accepting applications for the positions in June, and ultimately hired in August.   *See* Plaintiff's Deposition, Ex. 6 at p. 50-53.   One of the eliminated positions was held by Bennie Bowers, who left the District entirely.   *Id*.   The other two eliminated positions were the security coordinators held by Thomas and Gerald Tatum. *Id*.   The District's three-month timeline of eliminating, interviewing, and replacing security positions, completely dismantles Grigsby's causal connection argument.   Any temporal argument that might be made, is overshadowed by the fact and timing of the District's restructuring, all reasonable non-discriminatory employment decisions.

In the present case, Grigsby's protected conduct was her previous complaint of sexual harassment against her then-supervisor, Bennie Bowers.   *See* Amd. Compl. at ¶ 12.   Grigsby lodged this harassment claim in April of 2018.   *See* Ex. 7(b).   Grigsby then applied for the facilitator position which became available in June 2018 and the District hired another candidate, Thomas, in August.   *See* Amd. Compl. at ¶ 14.   As stated, the temporal proximity of the protected conduct must be very close.   *Wallace*, 415 F.3d at 855.   In this case, Grigsby lodged a complaint on April 3, 2018, and was not hired for a position in August.   *Id*.   The temporal connection here is weak.

Grigsby has provided no evidence to link her protected conduct with the adverse employment actions of the District.   The fact that Grigsby submitted the complaint in April and was not selected for a position in August, does not by itself create a prima facie retaliation case.

Furthermore, the particular context under which Grigsby was applying for the promotion, and the timing of the District's position restructuring, undermines any argument that can be made for temporal proximity.

### b. The District Had Legitimate, Non-Discriminatory Reasons Not to Hire Grigsby to the Facilitator Position.

Assuming, *arguendo*, that Grigsby can establish a prima facie case of discrimination or retaliation under Title VII or the ADA, a rebuttable presumption of discrimination arises. The burden then shifts to the defendant, who must articulate a legitimate, nondiscriminatory reason for the adverse employment action.   *Rose-Maston v. NME Hosps.*, 133 F.3d 1104, 1106 (8th Cir. 1998).   If the District can produce a legitimate non-discriminatory reason, the prima facie case disappears. *Id.*   "The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence."   *Floyd v. State of Mo. Dep't of Soc. Servs., Div. Of Family Servs.*, 188 F.3d 932, 936 (8th Cir. 1999).   The burden to articulate a non-discriminatory reason is one of production and not persuasion; it can involve no credibility assessment.   *Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006). The Eighth Circuit has consistently held that violating a company policy is a legitimate, non-discriminatory reason for terminating an employee.   *Id.*   The District has legitimate non-discriminatory reasons for not having promoted Grigsby.

First, Grigsby was less qualified than the other candidates who also applied for the position.   Thomas outperformed Grigsby in the interview process, scoring an average of 23 out of 24 points to Grigsby's 21 out of 24 points. *See* Interview Memorandum and Scoring Sheet, attached to District's Motion as <u>Exhibit 13</u>.   Grigsby was not runner up but was the third ranked candidate among all the interviewees.   *Id.*   Grigsby was simply not selected because she was not the best or even second-best candidate for the position.   *Id.*   Grigsby scored as the third

highest ranked candidate in the interview process.   This means, had the District not hired Mr. Thomas to the facilitator position, there was still another candidate who could have been hired before Grigsby.   Grigsby scored lower across the board in background and experience, communication skills, and ability to work with others.   *Id*.   Both Thomas and Tatum were Grigsby's superiors before the interview process; both candidates scored higher.   Thomas held a senior position—the position replaced by the facilitator—for five years prior to applying for facilitator.

The evidence in this case overwhelmingly demonstrates that Grigsby was squarely outmatched for the position to which she applied.   Grigsby and her former superior, Thomas, were both applying for the position.   Thomas, therefore, began with an experience advantage as a security coordinator.   Thomas's position, which had been eliminated, was replaced with the facilitator position, which was per se beneath Thomas's pay grade and above Grigsby's.   *See* Chart on page 2, *supra*.   Thomas accepting the position of facilitator resulted in a roughly $20,000.00 reduction in salary.   *See* Exs. 11, 3, and 12.   The previous position held by Thomas was in daily pay range 11 and the facilitator position he accepted was in daily pay range 1.   *Id*.

In Grigsby's Deposition, she testified that *she felt* that she was more qualified because:

> At the time…Mr. Thomas only dealt with the surveillance cameras and alarm systems. He did not do the drug testing as I did.   He did not do any of the after-hour—he did a little of the after-hour events. But I felt that he was less qualified because he did not deal with the children, he didn't deal with doing seminars or training at all, or conferences when it came to dealing with anything district.   That's why I put that there, and that's why I felt that.

*See* Plaintiff's Deposition, <u>Ex. 6</u> at p. 61-62.   Grigsby's argument that she was "more qualified" than Thomas was a recitation of her job duties.   Grigsby fails to recognize that she and Thomas had different positions.   At any rate, Grigsby was misinformed about Thomas's responsibilities.

Grigsby's testimony alleged that she was more qualified than Thomas because, despite him being her supervisor, she had more responsibilities. *Id.* at p. 61-62.   Thomas's responsibilities as Coordinator were more numerous and managerial in nature. *See* Coordinator Job Classification, attached to District's Motion as Exhibit 15.   Thomas's responsibilities involved creating reports, supervising, budgeting, training, overseeing security guards and the administrative sergeant, background checks, interviews, and more.   *Id.*   To give this Court an objective standard, Thomas's Coordinator position had 13 of 18 overlapping performance responsibilities with the facilitator position to which he was hired.   *See Id.*; *see also* Ex. 10.   Grigsby's position had at most 2 overlapping responsibilities.   *See* Administrative Sergeant Job Classification, attached to District's Motion as Exhibit 16.   Grigsby's assessment that she was more qualified for the facilitator position was unfounded and erroneous.

Second, Grigsby's honesty and reliability had been called into question after a Doctor notified the District that Grigsby was putting forth an unreliable effort in physical examinations. It appeared Grigsby was manipulating her medical results, which was affecting her work status with the District.   Dr. Clayton Riley of Martin Orthopedics stated,

> It was determined that [Grigsby] was putting forth an unreliable effort. No consistent objective measures could be determined and therefore no impairment rating was given. This has been my general experience with Ms. Grigsby as well. There have been inconsistent physical exam findings and no effort given during physical exam which makes it impossible for me to assess her condition or progress.

*See* Martin Orthopedics Report, attached to District's Motion as Exhibit 14.   Grigsby's integrity, as it related to her injury or her ability to perform certain tasks, had been called into question when her orthopedic physician claimed he could not determine her results because of a lack of effort. The Letter from Dr. Riley was file marked for May 22, 2018, roughly two weeks before Grigsby

applied for the facilitator position.   *Id*.   The District first became aware of Grigsby's potential dishonesty when she claimed she could not type with her uninjured hand/ arm but continued to drive a stick shift truck using her injured arm, daily.   The District remained silent on this sensitive issue as the District would have no place or authority to assess an employee's injury and capabilities.   After the orthopedist wrote his letter of concern to the District, it was acutely aware of Grigsby's potential deception. *Id*.

Here, the District had legitimate non-discriminatory reasons for not promoting Grigsby. Assuming the District has met this burden, then Grigsby must provide a genuine issue of material fact showing the reasons were merely a pretext for discrimination.   *See Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 792 (8th Cir. 2011).

### c. Grigsby Cannot Show that the District's Proffered Reason Is Merely a Pretext for Intentional Discrimination.

As the District has met the burden of articulating a nondiscriminatory basis, the burden shifts back to the Grigsby to show that the District's proffered reason is merely a pretext for intentional discrimination.   *Lindeman,* 899 F.3d 604.   Grigsby must provide a genuine issue of material fact showing that these reasons were merely a pretext for discrimination.   *See Barber v. Cl Truck Driver Training, LLC*, 656 F.3d 782, 792 (8th Cir. 2011).   Grigsby is unable to meet her last burden, as she has not presented any evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason.   *Id*.

"To demonstrate pretext, a plaintiff must present sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason."   *Wilking v. Cnty. of Ramsey*, 153 F.3d 869, 874 (8th Cir. 1998) (quoting *Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1072 (8th Cir. 1998)).   "This

burden will not be met by simply showing that the reason advanced by the employer was false; rather, [the plaintiff] must demonstrate that a discriminatory animus lies behind the defendants' neutral explanations." *Wilking*, 153 F.3d at 874 (quoting *Roxas v. Presentation College*, 90 F.3d 310, 316 (8th Cir. 1996)). "Specifically, the plaintiff must do more than simply create a factual dispute as to the issue of pretext; [s]he must offer sufficient evidence for a reasonable trier of fact to infer discrimination." *Id.* at 874 (quoting *Matthews v. Trilogy Communications, Inc.*, 143 F.3d 1160, 1165 (8th Cir. 1998)). "[M]ore substantial evidence of discrimination is required to prove pretext, because evidence of pretext is viewed in the light of [the employer's] legitimate, nondiscriminatory explanation." *Jones v. United Parcel Service, Inc.*, 461 F.3d 982, 992 (8th Cir. 2006).

Grigsby could have established that the District's decision not to promote her was pretextual in multiple ways. First, Grigsby could have relied on a strong prima facie case, as this can establish evidence of pretext. *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 834 (8th Cir. 2002). However, a plaintiff's burden to prove pretext is more substantial than the burden of proving a prima facie case. *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 881 (8th Cir. 2005) (quoting *Smith*, 302 F.3d at 834). Grigsby's case is far too weak to allow a fact finder to infer pretext, as Grigsby has not presented any facts to support her claims for discrimination and retaliation. Even assuming Grigsby has been able to make a prima facie showing on her claims, the District has articulated legitimate non-discriminatory reasons for its conduct.

Grigsby also could have shown pretext by showing that the District's proffered reasons for its decision had "no basis in fact." *Smith*, 302 F.3d at 834. The District has put forth undisputed evidence that Grigsby was not the most qualified candidate for the position to which she applied; two candidates scored higher than Grigsby in the interview process. Additionally,

after receiving communications from Grigsby's orthopedic doctor, the District had concerns that Grigsby was possibly manipulating her medical examinations to limit her work task exposure. *See* Ex. 14.   It does not matter whether these concerns were 100-percent factually accurate, as "the burden will not be met by simply showing that the reason advanced by the employer was false."   *Wilking,* 153 F.3d at 874 (quoting *Roxas v. Presentation College*, 90 F.3d 310, 316 (8th Cir. 1996)).   What matters in this case is that the District had more qualified candidates, and concerns over Grigsby's integrity, as these are legitimate nondiscriminatory reasons supporting the District's decision to hire an alternative candidate.

In her Complaint, Grigsby claims that the District hired a "lesser qualified male" to the position of facilitator.   *See* Amd. Compl. at ¶ 21. Grigsby offers no supporting facts in her Complaint.   In Grigsby's deposition, when asked why she stated that the prevailing candidate was a lesser qualified male, Grigsby stated she *felt* that she was more qualified because she and Thomas had different job responsibilities.   *See* Plaintiff's Deposition at p. 61-62.   Grigsby still failed to point to an objective standard that would allow a fact finder to determine that she was more qualified for the position in anyway.

Grigsby complaints that she was denied access to company vehicles, while Thomas was allowed to drive District vehicles.   *See* Amd. Compl. at ¶ 15.   Thomas held a *different* and *senior* position to that of Grigsby.   *See* Ex. 6 at p. 46; *see also* Amd. Compl. at ¶ 14; *see also* Exs. 3 and 12.   Thomas's position required him to travel to and from different schools to manage the District's alarm systems—as Grigsby testified, Thomas was in charge of everything relating to the District's security systems.   *See* Ex. 6, Deposition of Plaintiff at p. 62; *see also* Ex. 15. Grigsby and Thomas were not comparators and she cannot prove pretext.

Beyond mere speculation, Grigsby has not offered any evidence to support a claim of pretext.   Pretext requires her to demonstrate that the District's reasons were false, and that intentional discriminatory motive was the real reason that she was not selected for the position. Grigsby has failed to produce any evidence tying the District's decision to a discriminatory or retaliatory motive, and therefore her claim must fail, and the District is entitled to summary judgment.

### 2.  ADA Standard

The Americans with Disabilities Act prohibits discrimination on the basis of disability. 42 U.S.C. § 12112(a). When presented only with circumstantial evidence, an appellate court analyzes the Americans with Disabilities Act claims under the same McDonnell Douglas burden-shifting analysis.   *Lindeman v. Saint Luke's Hosp. of Kan. City*, 899 F.3d 603, 604 (8th Cir. 2018). To survive a motion for summary judgment under that analysis, the employee has the initial burden of proving a prima facie case of discrimination.   *Id*.   Under this scheme, a plaintiff first must establish a prima facie case of discrimination by showing that she is disabled within the meaning of the ADA; that she is qualified to perform the essential functions of her job with or without reasonable accommodation; and that she suffered an adverse employment action because of her disability.   *Wilking v. Cty. of Ramsey*, 153 F.3d 869, 871 (8th Cir. 1998).   The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.   *Lindeman,* 899 F.3d 604.   Finally, the burden shifts back to the plaintiff to show that the employer's proffered reason is merely a pretext for intentional discrimination.   *Id*.   In order to show that an employer's proffered reason is merely a pretext for intentional discrimination, a plaintiff must present sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason.

*Id*.  Summary judgment is proper if a plaintiff fails to establish any element of her prima facie case.  *Weber v. American Express Co.,* 994 F.2d 513, 515-16 (8th Cir. 1993).

### a. Grigsby Cannot Make a Prima Facie Discrimination Claim under the ADA Because Grigsby Cannot Show that She Suffered an Adverse Employment Action Because of Her Disability.

To establish a prima facie claim for discrimination under the Americans with Disabilities Act, a plaintiff first must show disability within the ADA, that she is qualified to perform the essential functions of her job with or without reasonable accommodation, and that she suffered an adverse employment action because of her disability.  *Wilking v. Cty. of Ramsey*, 153 F.3d 869, 871 (8th Cir. 1998).  Generously assuming that Grigsby's shoulder injury qualified her as disabled under the ADA, that she suffered an adverse employment action when she was not promoted by the District, Grigsby still cannot establish a prima facie claim.  Grigsby has not shown that she is qualified to perform the essential functions of her job with or without reasonable accommodation.

The term *reasonable accommodation* refers to those accommodations which presently, or in the near future, enable the employee to perform the essential functions of his [or her] job.  *Aubrey v. Koppes*, 975 F.3d 995, 1000 (10th Cir. 2020) (emphasis added).  The ADA provides that a reasonable accommodation may include: (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.  *See Id*.; *see also* 42 U.S.C. § 12111(9).

In the present case, Grigsby stated in her EEOC charge that she could not type on a computer. *See* Exhibit 7(b).   Grigsby also stated in her Complaint that she was forced to "perform unnecessary typing" and duties that her supervisor knew would *cause further injury*.   *See* Amd. Compl. at ¶¶ 18 and 19.   Grigsby testified in her deposition that her job required drug testing and doing seminars and training.   *See* Plaintiff's Deposition at p. 61-62.   It is difficult to imagine how, if Grigsby could not perform a task as simple as typing, Grigsby would administer drug tests, train others, or get promoted to a high level administrative position that would undoubtedly require typing.   It is even more difficult to imagine Grigsby engaging in any physical tasks, as Grigsby testified that the security supervisors still performed security services.   *Id*. at 43.

Grigsby clearly could not perform some of the trivial job functions of the facilitator position, like active school security, but evidently could not perform essential job functions either. Grigsby was clear that typing was beyond her capabilities.   *See* Amd. Compl. at ¶¶ 18 and 19. That would mean tasks such as writing, training, administering drug tests, or literally anything that requires use of the hands or arms would be outside the realm of tasks Grigsby could perform. The fact that Grigsby was so disabled that she could not type, even with one hand, begs the question: *What job could Grigsby perform?*   The Administrative Sergeant position required Grigsby to "control violent individuals and situations on and at school events" and "file accident reports and workman's compensation forms and submit incident reports for further investigation." *See* Ex. 16.   The facilitator position had more responsibilities than the Administrative Sergeant. *See* Ex. 10.   The facilitator position required tasks such as responding to after hour emergencies, overseeing playground inspections to detect and prevent safety hazards, prepare annual reports on state safety programs, oversee drug and alcohol testing, prepare annual budget, and much more.

Grigsby could not have performed these tasks given that typing was beyond her scope of completable tasks.

The determination of whether a requested accommodation is reasonable must be made on the facts of each case taking into consideration the particular individual's disability and employment position. *Aubrey*, 975 F.3d at 1000. If Grigsby could not perform trivial tasks, such as typing, Grigsby could not perform the tasks of the facilitator, with or without reasonable or unreasonable accommodations.

>   **b. The District Had Legitimate, Non-Discriminatory Reasons Not to Hire Grigsby to the Facilitator Position, and Grigsby Cannot Prove Those Reasons Were Pretextual.**

For the reasons discussed at length in this Brief, the District had legitimate non-discriminatory reasons for not hiring the Plaintiff to the position of facilitator. First, Grigsby was less qualified than the other candidates who also applied for the position. *See* Ex. 13; *see also* Interview Assessments, attached to District's Motion as <u>Exhibit 17</u>. Grigsby was not runner up but was the third ranked candidate among all the interviewees. *Id*. Second, Grigsby's honesty and reliability had been called into question after a Doctor notified the District that Grigsby was putting forth an unreliable effort in physical examinations. *See* <u>Ex. 14</u>. The District had legitimate, non-discriminatory reasons for not promoting Grigsby.

Beyond mere speculation, Grigsby has not offered any evidence to support a claim of pretext. Pretext requires her to demonstrate that the District's reasons were false, and that intentional discriminatory motive was the real reason that she was not selected for the position. Grigsby has failed to produce any evidence tying the District's decision to a discriminatory or retaliatory motive, and therefore her claim must fail, and the District is entitled to summary judgment.

### 3. Any Retaliation Claim Brought Under 42 U.S.C § 1983 Fails for the Same Reasons.

The Eighth Circuit Court of Appeals has held that a § 1983 claim based on alleged violation of equal protection in the employment context is analyzed in the same way as a Title VII claim of sex, race, or religious discrimination. *Hicks v. St. Mary's Honor Ctr.*, 970 F.2d 487, 490–91 (8th Cir. 1992), rev'd on other grounds, 509 U.S. 502, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *Richmond v. Board of Regents of the Univ. of Minnesota*, 957 F.2d 595, 598 (8th Cir. 1992) (burden of showing prima facie case of discrimination is the same under Title VII, § 1981, § 1983, or the IDEA); *Briggs v. Anderson*, 796 F.2d 1009, 1021 (8th Cir. 1986) (inquiry into intentional discrimination for individual actions brought under §§ 1981 and 1983 is essentially the same as inquiry under Title VII); *Craik v. Minnesota State Univ. Bd.*, 731 F.2d 465, 468 n. 5 (8th Cir. 1984) (issue of discriminatory intent is common to analyses under Fourteenth Amendment, § 1983, and Title VII).

Thus, Grigsby's § 1983 claim fails for the same reasons as above, and District is entitled to summary judgment.

## IV.   <u>CONCLUSION</u>

Based upon the foregoing argument and authority, the District respectfully submits that its Motion for Summary Judgment should be granted, and that Plaintiff's Complaint should be dismissed with prejudice.

Respectfully submitted,

BEQUETTE, BILLINGSLEY & KEES, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201-3469
Phone: (501) 374-1107
Fax: (501) 374-5092
Email: tstewart@bbpalaw.com

By:  **T. "Teddy" Stewart**
    **T. "Teddy" Stewart,** Ark. Bar No. 2018189