IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION


WANDA GRIGSBY                                                                    PLAINTIFF

VS.                              CASE NO.  4:19-CV-778 LPR

PULASKI COUNTY SPECIAL SCHOOL DISTRICT,
A Public Body Corporate                                                          DEFENDANT

<u>PLAINTIFF'S BRIEF IN SUPPORT IN OPPOSITION TO THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

<u>Introduction</u>

This is a civil rights action brought pursuant to 42 U.S.C.S. § 2000e *et seq*. (Title VII of

the Civil Rights Act of 1964, as amended), 42 U.S.C.S. § 12101 (American with Disabilities Act),

in order to recover damages against the defendants for the unlawful discriminatory employment

practices that the plaintiff Wanda Grigsby has been subjected to, all on account of her sex,

disability, and in retaliation for having opposed discriminatory practices.  The plaintiff also seeks

relief pursuant to 42 U.S.C.S. § 1983, in that the unlawful employment practices were committed

by the defendants while acting under color of law.  This is also an action for declaratory judgment

pursuant to 28 U.S.C. § 2201 to declare the rights and other legal relations between the parties.

The plaintiff is also seeking equitable relief and injunctive relief as well.

<u>Statement of Facts</u>

Wanda Grigsby graduated from Hall High School in 1985.  (**See Deposition of Wanda

Grigsby attached herein as Plaintiff's Exhibit "A", p. 11**).  Ms. Grigsby then went to the

University of Arkansas at Little Rock, where she obtained her bachelor's degree, and graduated in

1990.  Ms. Grigsby also obtained her license through the Academy of Private Investigations and

Protection – Professional Inspection Services, which allows her to conduct private investigations. Ms. Grigsby received this license in May 2002. (**Grigsby's depo. p. 13**). Ms. Grigsby also obtained a license from the Arkansas Department of Human Services, that allowed her to inspect jails for the safety of juveniles. (**Grigsby's depo., p. 15**).

Ms. Grigsby was hired by the Pulaski County Special School District (PCSSD) in August 2012 as a security officer and was then promoted to the position of Safety and Security Training Officer effective July 13, 2015. (**Grigsby's depo. p. 39**) (**See also Defendant's Exhibit 2, Doc. # 26-2**). As the Safety & Security Training Officer, Ms. Grigsby was responsible for training security officers. Ms. Grigsby was also responsible in providing training for the entire district on issues such as active shooter, and conducted physical training for the officers. Ms. Grigsby also conducted trainings and seminars on student safety. (**Grigsby's depo., p. 39**). Also, as the Safety & Security Training Officer, Ms. Grigsby supervised the security officers. (**Grigsby's depo., p. 40**).

In 2017, Ms. Grigsby suffered an on-the-injury when she was handling a physical therapy dummy, that fell on her. (**Grigsby's depo., p. 18**). Ms. Grigsby had the accident in May or June 2017, that required her to have surgery in November 2017. (**Grigsby's depo., p. 20**).

The Pulaski County Special School District went through budget cuts due to losing desegregation funds. As a result of the budget cuts, Ms. Grigsby was demoted to the position of Administrative Sergeant, which resulted in a pay cut in the amount of $20,000.00. Ms. Grigsby was the only Safety & Security Training Officer for the district, which position was eliminated. When the district cut the Safety & Security Training Officer's position, Ms. Grigsby was offered the Administrative Sergeant's position, which was a newly created position, but at a pay of

$20,000.00 less than what she was making as the Safety & Security Training Officer.  (**Grigsby, p. 41**).

In May 2017, Ms. Grigsby began to experience problems with her superior Bennie Bowers. (**Grigsby's depo., p. 48**).  When Ms. Grigsby became the Administrative Sergeant, she answered to Bennie Bowers, until his resignation.  (**Grigsby's depo. p. 46**).  On April 3, 2018, Ms. Grigsby filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), contending that Mr. Bowers had subjected her to sexual harassment.  (**Grigsby's depo., p. 56**). The parties went to mediation with the EEOC, and they settled their differences.  Ms. Grigsby signed a settlement agreement on June 9, 2018.  (**Grigsby's depo., p. 57**).

When Ms. Grigsby filed her charge of discrimination with the EEOC in April 2018, Mr. Bowers was still employed by the district.  (**Grigsby's depo., p. 58**).  Paul Brewer served as the Chief Executive Officer, with responsibilities over personnel matters.  Prior to filing her Charge of Discrimination with the EEOC, the plaintiff had filed a grievance with Mr. Brewer.  Mr. Brewer advised Ms. Grigsby that she had to continue to work under the supervision of Mr. Bowers, and had to continue to work in the same office with him.  (**Grigsby's depo., p. 63-64**).   Due to the allegations made by Ms. Grigsby, Mr. Bowers was forced to resign.  (**Grigsby's depo., p. 38, 57**).

 Once Mr. Bowers resigned his position as Director of Security, Paul Brewer tasked Ms. Grigsby with the responsibility of overseeing the office.  (**Grigsby's depo., p. 85**).  Ms. Johnson was serving in the role of facilitator during July and August 2018.  Paul Brewer had requested Ms. Grigsby to serve in this capacity, as well as Curtis Johnson.  (**Grigsby's depo., p. 49**).   Paul Brewer served as the Chief Executive Officer, while Curtis Johnson served as the Executive Director of Operations.  (**See Defendant's Exhibit 13, Doc. # 26-13**).  When Ms. Grigsby became the Administrative Sergeant, there were no facilitator's positions.  Dave Thomas and Gerald Tatum

served as captains, and Bennie Bowers served as the Director.  When Mr. Bowers resigned, Paul Brewer told Ms. Grigsby to handle the affairs of the office, serving in the role as a facilitator. (**Grigsby's depo., p. 52**).

During the spring of 2018, the defendant decided to advertise two (2) facilitator's position. (**See Plaintiff's Exhibit "B" – Organization Chart**). Ms. Grigsby applied for one of the facilitator's positions in May 2018.  (**Grigsby's depo., p. 59**).  Ms. Grigsby was interviewed for the facilitator's position on August 16, 2018.  (**See Defendant's Exhibit 17, Doc. #26-17, pp. 5-8**). However, prior to applying for the facilitator's position, Paul Brewer had Ms. Grigsby acting in the capacity as facilitator.  (**Grigsby's depo., p. 49**).   Ms. Grigsby was in the role as facilitator until August 30, 2018, when they announced that Dave Thomas was hired as the facilitator. (**Grigsby's depo., p. 50**).

There were nine (9) candidates who were interviewed for the facilitator's position.  There were three (3) females and six (6) males interviewed for the position.  (**See Defendant's Exhibit 13**).  Ms. Grigsby made the third highest score.  However, the scoring was based on subjective criteria.  The subjective criteria used to rate the candidates are as follows:

a)    Ability to Implement Job Description;

b)    Ability to work with People;

c)    Personal Characteristics

| Rater | David Thomas | Wanda Grigsby | |
|---|---|---|---|
| Loria Bryant | 24 | 23 | |
| Robert Currillo | 22 | 22 | |
| Cynthia D'Abadie | 22 | 21 | |
| Curtis Johnson | 24 | 18 | |
| | | | |

**Defendant's Exhibit 17, Doc. # 26-17.   See also Defendant's Exhibit 13, Doc. # 26-13**.

Director Curtis Johnson awarded the lowest score to Ms. Grigsby between herself and Mr. Thomas. Despite the fact that Mr. Johnson noted that Mr. Thomas "struggle[d] with Act 393," Johnson still awarded Mr. Thomas a perfect score of 24. (**Defendant's Exhibit 17, Doc. # 26-17, p. 3**). Ms. Bryant and Ms. D'Abadie were of the opinion that only one point separated Thomas and Grigsby, with Currillo believing that both candidates were equal. Mr. Johnson rated Ms. Grigsby six (6) points below that of Mr. Thomas, which raises a question of a possible bias against Ms. Grigsby.

When Ms. Grigsby was not selected for the facilitator's position, she filed a second charge of discrimination with the EEOC on December 20, 2018. (**Grigsby's depo., p. 59**). Ms. Grigsby contends that she was discriminated against based on her sex and in retaliation for having complained about prior discriminatory treatment. (**Grigsby's depo., p. 60**).

Dave Thomas was a personal friend of Bennie Bowers. As part of the EEOC mediation process, Mr. Bowers was forced to resign. Although Ms. Grigsby felt better about Bowers' leaving, she did feel uncomfortable about having to work under Bowers' buddy – Dave Thomas. (**Grigsby's depo., p. 38**). Shortly after becoming the Safety and Security Facilitator, Mr. Thomas issued a letter of warning to Ms. Grigsby about the difficulty that she was having in typing information for employee background checks with the Arkansas State Police. When Ms. Grigsby reminded Mr. Thomas that the information could be handwritten by the employees filling out the form, he yelled at her. Mr. Thomas issued Ms. Grigsby a letter of warning on September 5, 2018. (**Grigsby's depo., p. 76**). Due to the condition of Ms. Grigsby's arm, it will swell up, and she could not use it sometimes. (**Grigsby's depo., p. 69**). Mr. Thomas would constantly make statements about Ms. Grigsby's arm, and would constantly tell her that he did not know why she was there, implying that she needed to quit and go home. (**Grigsby's depo., p. 71**). Also, Mr.

Thomas started monitoring Ms. Grigsby's activities, which culminated with a counseling on January 23, 2019.  (**See Plaintiff's Exhibit "C"**).   On February 27, 2019, Mr. Bowers gave Ms. Grigsby a performance appraisal, with areas for growth noted.  Ms. Grigsby refused to sign this performance evaluation.  (**See Plaintiff's Exhibit "D-1" and "D-2"**).

On or about March 8, 2019, Ms. Grigsby was asked to go to Sylvan Hills Middle School, because there were issues of bullying occurring at the school.  Ms. Grigsby was requested to provide training for the students.  While Ms. Grigsby was at the school, she was attacked by a parent, which caused her to re-injure her arm and shoulder.  (**Grigsby's depo., pp. 66-68**).  Prior to Ms. Grigsby's second injury, she was on light duty status.  (**Grigsby's depo., p. 72**).  After Mr. Grigsby was injured the second time on March 8, 2019, she never returned to work. (**Grigsby's depo., p. 73**).  Ms. Grigsby resigned on January 15, 2020.  (**Grigsby's depo., p. 23**).

Statement of Law

A.   <u>Summary Judgment Standard</u>

Pursuant to Rule 56 of the Federal Rules of Civil (FRCP), a movant is entitled to an order granting summary judgment when there is no genuine issue as to any material fact.

> Summary judgment can properly be entered when there are no genuine material facts that can be resolved by a finder of fact; that is, there are no facts which could reasonably be resolved in favor of either party.  The court must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party prevail as a matter of law.'

<u>Twin City Bank, et al. v. Verex Assurance, Inc</u>., 733 F.Supp. 67 (E.D.Ark. 1990), citing, <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).  "On summary judgment the plaintiff need only present sufficient evidence to raise genuine doubt as to the legitimacy of the defendant's motives."  <u>Peterson v. Scott County</u>, 406 F.3d 515, 522 (8th Cir. 2005).

"Summary judgment should be 'cautiously invoked' so that no person will be improperly deprived of his Seventh Amendment right to a jury trial where there is no genuine issue as to any material fact." Robertson v. White, 635 F.Supp. 851, 870 (W.D. Ark. 1986).  The Eighth Circuit has also held that "a judge does not sit as a trier of fact when deciding a motion for summary judgment even if the case is scheduled to be heard without a jury." Medical Institute of Minnesota v. Nalts, 817 F.2d 1310 (8th Cir. 1987).

The moving party has the burden of demonstrating that there is no genuine issue as to any material fact, and any doubt should be resolved in favor of the party resisting the motion. Ozark v. Milling Co., Inc. v. Allied Mills, Inc., 480 F.2d 1014 (8th Cir. 1973); see also, Tolan v. Cotton, 572 U.S. ___, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014); Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).  The courts have held that since summary judgment is such an extreme remedy, a motion for summary judgment should be granted "only if no genuine issue exists as to any material fact." Haas v. Weiner, 765 F.2d 123 (8th Cir. 1985).  "In deciding whether to grant a motion for summary judgment, the district court must view the evidence in favor of the party opposing the motion and give him the benefit of all reasonable inferences." Green v. St. Louis Housing Authority, 911 F.2d 65, 68 (8th Cir. 1990); Kegal v. Runnels, 793 F.2d 924, 926 (8th Cir. 1986); Johnson v. Minnesota Historical Society, 931 F.2d 1239, 1244 (8th Cir. 1991); Canada v. Union Electric Company, 135 F.3d 1211, 1212 (8th Cir. 1997).  Affidavits are not necessary to oppose a motion for summary judgment.  See Adams d/b/a D. L. Adams Motors v. Hudspeth Motors, Inc., 587 S.W.2d 227 72 (Ark.App. 1979).

> Fed.R.Civ.P. 56(c) provides that summary judgment shall be entered if the 'pleadings, depositions answers to interrogatories, and admissions on file together with the affidavits, *if any*, show that there is not a genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'

Green v. St. Louis Housing Authority, 911 F.2d 65, 68 (8th Cir. 1990) (emphasis added).

"Summary judgment should be sparingly used and then only in those rare instances where there is no dispute of fact and where there exists only one conclusion. All the evidence must point one way and be susceptible of no reasonable inference sustaining the position of the non-moving party." Holly v. Sanyo Mfg. Inc., 771 F.2d 1161, 1164 (8th Cir. 1985).

The Courts have also held that "[s]ummary judgment should seldom be granted in discrimination cases." Bassett v. City of Minneapolis, 211 F.2d 1097, 1099 (8th Cir. 2000), *citing Smith v. St. Louis University*, 109 F.2d 1261, 1264 (8th Cir. 1997) (Arnold, R., C.J., Beam & Alsop, JJ.); *Keathley v. Ameritech Corp.*, 187 F.3d 915, 919 (8th Cir. 1999) (Bowman, Heaney & Longstaff, JJ.); *Lynn v. Deaconess Med. Center West Campus*, 160 F.3d 484, 486 (8th Cir. 1998) (Arnold, R., Beam & Arnold, M., JJ.); *Helfer v. United Parcel Serv., Inc.*, 115 F.3d 613, 615 (8th Cir. 1997) (Loken, Arnold, M. & Gunn, JJ.); *Bialas v. Greyhound Lines, Inc.* 59 F.3d 759, 762 (8th Cir. 1995)(Beam, Gipson & Murphy, JJ.0; *Oldham v. West*, 47 F.3d 985, 988 (8th Cir. 1995) (Hanson, Gibson, F. & Will, JJ.); *Weissman v. Congregation Shaare Emeth*, 38 F.3d 1038, 1045 (8th Cir. 1994), (McMillian, Bright & Loken, JJ); *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994)(Arnold, R., C. J. Wollman & Beam, JJ.); *Johnson v. Minnesota Historical Society*, 931 F.2d 1239, 1244 (8th Cir. 1991) (McMillian, Fagg & Strom, JJ.); *Hillebrand v. M-Tran Industries, Inc.*, 827 F.2d 363, 364 (8th Cir. 1987)(Lay, C. J. Heaney & Larson, JJ.). "Summary judgment should seldom be granted in employment discrimination cases because intent is often the central issues and claims are often based on inference." Peterson v. Scott County, 406 F.3d 515, 520 (8th Cir. 2005).

The Eighth Circuit cautioned against using summary judgment in discrimination cases. "Notably, we have repeatedly emphasized that 'summary judgment should be used sparingly in the context of employment discrimination and/or retaliation cases where direct evidence of intent

is often difficult or impossible to obtain.'" Torgerson v. City of Rochester, 605 F.3d 584, 593 (8th Cir. 2010), *quoting*, Wallace v. DTG Operations, Inc., 442 F.3d 1112, 11117 (8th Cir. 2006); *see also*, Peterson v. Scott County, 406 F.3d 515, 520 (8th Cir. 2005)[1].  We have also cautioned that summary judgment should not be granted in 'close' cases. '[T]he need to resolve factual issues in close cases is the very reason we have juries.' Torgerson, 605 F.3d at 594, citing, First National of Omaha v. Three Dimension Systems Products, Inc., 289 F.3d 542, 545 (8th Cir. 2002); *see also*, Keho v. Anheuser-Busch, Inc., 995 F.2d 117, 120 (8th Cir. 1993).

> [t]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554-555 (1990); *Liberty v. Lobby, Inc.*, *supra.*, at 254; *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 696, n. 6 (1962).  'Credibility determinations, the weighing of the evidence, and all the drawing of legitimate inferences from the facts are jury functions, not those of a judge.' *Liberty Lobby*, *supra*, at 255.  Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.  *See Wright & Miller 299.*  That is, the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses.'

Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

> Summary judgment is warranted when there remain no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  We review de novo the summary judgment record in light most favorable to Bell to determine whether or not a reasonable person could make inferences supporting plaintiff's claims.  *See Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1111 (8th Cir. 1995).  But neither the district court's function nor ours is to weigh evidence in the

---

[1] Undersigned counsel recognizes that the Eighth Circuit, in a deeply divided opinion (6-5), indicated that "[b]ecause summary judgment is not disfavored and is designed for 'every action,' panel statements to the contrary are unauthorized and should not be followed."  Torgerson, et al. v. City of Rochester, Eighth Circuit Court of Appeals, No. 09-1131 (June 1, 2011) (*en banc*) (emphasis added).  It is really not clear whether the Eighth Circuit reversed all of those opinions, or just criticized them.  Nevertheless, the practical effect of the "seldom be granted" language as espoused by the Eighth Circuit in *Bassett*, supra., and its progeny, in recent times has had no serious application, to benefit civil rights litigants.  *See* Clermont and Swab, *Employment Discrimination Plaintiffs In Federal Court: From Bad to Worse?*, 3 Harv. L. & Pol'y Rev. 1 (Winter 2009).

summary judgment record to determine the truth of any factual issue; we merely determine whether there is evidence creating a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 249-51 (1986).   Because employment discrimination cases frequently turn on inferences rather than direct evidence, the court must be particularly deferential to the party opposing summary judgment.

DeAudra Bell v. Conopco, Inc., 186 F.3d 1099, 1101 (8th Cir. 1999) (emphasis added), *citing* Snow v. Ridgeview Medical Center, 128 F.3d 1201, 1205 (8th Cir. 1997).

At the summary judgment stage, "[t]he controlling issue ordinarily is whether or not there exists a genuine issue of fact regarding any discriminatory motive."  Strate v. Midwest Bankcenter, Inc.,398 F.3d 1011, 1017-1018 (8th Cir. 2005).  The Eighth Circuit further stated that, "[w]e have long recognized that a genuine issue of fact regarding unlawful employment discrimination may exist notwithstanding the plaintiff's inability to directly disprove the defendant's proffered reason for the adverse employment action." Strate, 398 F.3d at 1017, *citing* O'Bryan v. KTIV Television, 64 F.3d 1188, 1192 (8th Cir. 1995).

[A] plaintiff bringing an employment discrimination claim may succeed in resisting a motion for summary judgment where the evidence, direct or circumstantial, establishes a genuine issue of fact regarding an unlawful motivation for the adverse employment action (i.e., a motivation based upon a protected characteristics), even though the plaintiff may not be able to create genuine doubt to the truthfulness of a different, yet lawful, motivation.

Strate, *supra*.

B.     42 U.S.C. § 1983

In that the defendant the Pulaski County Special School District is a Body Politic, created by the State of Arkansas, the plaintiff brings this cause of action pursuant to 42 U.S.C.S. § 1983, contending that she was deprived of her federally protected rights, by persons acting under color of law.  The language of 42 U.S.C.S. § 1983 reads as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation

of any rights, privileges, or immunities secured by the Constitution and laws, shall
be liable to the party injured in an action at law, suit in equity, or other proper
proceeding for redress.

It is well established that 42 U.S.C.S. § 1983 is an enforcement for violations of a citizen's individual rights as guaranteed by the Fourteenth Amendment of the United States Constitution. A bill introduced in the House of Representatives on March 28m 1871 as H.R. 320 (which is codified as 42 U.S.C.S. § 1983), known as the Civil Rights Act of 1871, was introduced as "a bill 'to enforce the provisions of the fourteenth amendment to the Constitution of the United States, and for other purposes.'" Monell v. Department of Social Services of City of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "The history of the Act (Civil Rights Act of 1871) is replete with statements indicating that Congress thought it was creating a remedy as broad as the protection that the Fourteenth Amendment affords the individual." Lugar v. Edmondson Oil Co., 457 U.S. 922, 935 (1982).

"Title 42 U.S.C. § 1983 provides a remedy for deprivations of rights secured by the Constitution and laws of the United States when that deprivation takes place 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . .'" Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982). The Court went on to note that "it is clear that in a § 1983 action brought against a state official, the statutory requirement of action 'state action' requirement of the Fourteenth Amendment are identical." 457 U.S. at 929. The key language in § 1983 for the case at bar is "custom or usage."

> [T]he touchstone of the § 1983 action against a government body is an allegation
> that official policy is responsible for a deprivation of rights protected by the
> Constitution, local governments, like every other § 1983 'person,' by the very terms
> of the statute, may be sued for constitutional deprivations visited pursuant to
> government 'custom' even though such a custom has not received formal approval
> through the body's official decision-making channels.

<u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658, 98 S.Ct. 2018, 56

L.Ed.2d 611 (1978).

      In another United States Supreme Court decision, the Court recognized that the official

policy need not be a written policy, the Court held, "[a]lthough not authorized by written law, such

practices of state officials could well be so permanent and well settled as to constitute a custom or

usage' with the force of law."  <u>Adickes v. S. H. Kress and Company</u>, 398 U.S. 144, 90 S.Ct. 1598,

1613-1614 (1970).  The Court cited a decision by Justice Frankfurther, who wrote:

> [I]t would be a narrow conception of jurisprudence to confine the notion of laws to
> what is found written on the statute books, and to disregard the gloss which life has
> written upon it.  Settle state practice . . . can establish what is state law.  The equal
> protection clause did not write an empty formalism into the Constitution.  Deeply
> embedded traditional ways of carrying out state policy, such as those of which
> petitioner complains, are often tougher than the dead words in the written text. 90
> S.Ct. at 1614, citing <u>Nashville, C. & St. Louis Rail Company v. Browning</u>, 310
> U.S. 362, 60 S.Ct. 968, 84 L.Ed.2d 1254 (1940).

The Fourteenth Amendment to the United States Constitution made the bill of rights applicable to

state action.  Basically, States are prohibited from abridging the privileges or immunities of its

individual citizens.  In dealing with the issue of what are privileges and immunities of individual

citizens, the United States Supreme Court cited an opinion by Mr. Justice Washington of the

Circuit Court for the District of Pennsylvania enunciated in the case of <u>Corfield v. Coryell</u>.  Mr.

Justice Washington noted that the privileges and immunities of citizens are fundamental rights.

Justice Washington wrote that "'[w]hat these fundamental principles are, it would be more tedious

that difficult to enumerate.  They may all, however, be comprehended under the following general

heads:  protection by the government, with the right to acquire and possess property of every kind,

and to pursue and obtain happiness and safety, subject, nevertheless, to such restraints as the

government may prescribe for the general good of the whole.'"  <u>Slaughter-House Cases</u>, 16 Wall.

36, 21 L.Ed. 394 (1873).  Also, the Fourteenth Amendment guarantees citizens of the United States equal protection of the laws.

In the case at bar, the plaintiff contends that she was discriminated against based on her sex, and further subjected to retaliation, when she was not selected for the facilitator's position in August 2018.  The defendant Pulaski County Special School District (PCSSD), is a state actor, and it has deprived the plaintiff of her federally protected rights of not being subjected to discrimination based on sex and retaliation.

C.      Title VII of the Civil Rights Act

The Civil Rights Act of 1964 (as amended), which is codified at 42 U.S.C.S. § 2000e−2, makes it unlawful to discriminate against a person in the employment context.  The law states:

It shall be an unlawful employment practice for an employer−

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national status.

"The language to Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens."  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, 676 (1973), citing, Griggs v. Duke Power Co., 401 U.S. 424, 429, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); Castro v. Beecher, 459 F.2d 725 (1st Cir. 1972); Chance v. Board of Examiners, 458 F.2d 1167 (2nd Cir. 1972); Quarles v. Phillip Morris, Inc., 279 F.Supp. 505 (E.D. Va. 1968).

Prima Facie Case

The plaintiff in a Title VII case has the initial burden of establishing a *prima facie* case of racial discrimination.  "The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination."   Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207, 215 (1981).  A *prima facie* case of racial discrimination is demonstrated if the plaintiffs show the following:

(i)     that they belong to a racial minority;

(ii)    that they applied and were qualified for a job which the employer was seeking applicants;

(iii)   that, despite their qualifications, they were rejected; and

(iv)   that, after their rejection, the positions remained opened and the employer continued to seek applicants from persons of complainant's qualifications.

McDonnell Douglas Corp. v. Green, 36 L.Ed.2d at 677.

"The threshold of proof necessary to make a *prima facie* case is minimal . . . ." Johnson v. Arkansas State Police, 10 F.3d 547 (8th Cir. 1993), *citing* Saint Mary's Honor Center v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

> The *McDonnell Douglas−Burdine* burden-shifting framework was created because only rarely will a plaintiff have direct evidence of discrimination.  Gone are the days (if, indeed, they ever existed) when an employer would admit to firing an employee because she is a woman, over forty years of age, disable or a member of certain race or religion.  To allow those genuinely victimized by discrimination a fair opportunity to prevail, courts will presume that, once the plaintiff has shown the above elements, unlawful discrimination was the most likely reason for the adverse personnel action.  The elements of that prima facie case, however, must not be applied woodenly, but must rather be tailored flexibly to fit the circumstances of each type of illegal discrimination.

Geraci v. Moody−Tottrup, International, Inc., 82 F.3d 578, 581 (3rd Cir. 1996), *citing* McDonnell

Douglas, 411 U.S. at 802, n. 13, 93 S.Ct. at 1824 n. 13; Torres v. Casio, Inc., 42 F.3d 825, 830 (3rd

Cir. 1994).

"The threshold of proof necessary to make a prima facie case is minimal . . ." Johnson v.

Arkansas State Police, 10 F.3d 547 (8th Cir. 1993), *citing* Saint Mary's Honor Center v. Hicks, 509

U. S. ____, 125 L.Ed.2d 407, 113 S.Ct. ___ (1993).

> In the promotion context, Favors can establish a prima facie case of prohibited racial
> discrimination by showing (1) she belongs to a racial minority, (2) she applied and
> was qualified for a job for which GSA was seeking applicants, (3) despite her
> qualifications, she was rejected, and (4) after her rejection, GSA filled or sought to fill
> the position with persons of Favor's qualifications.

Favors v. Fisher, 13 F.3d 1235, 1237 (8th Cir. 1994).

Facilitator's Position

The plaintiff contends that she was discriminated against based on her sex when she was

not selected for the facilitator's position on August 30, 2018.  Despite the fact that Ms. Grigsby

had served in the facilitator's role prior to Dave Thomas being awarded the position, and despite

the fact that she had more experience than Mr. Thomas, the defendant decided to select the lesser

qualified candidate.  The defendant also based their selection on subjective type interview criteria,

such as "ability to work with people," "ability to implement job description" and "personal

characteristics."  In looking at the scoring, it was apparent that Mr. Johnson preferred Dave

Thomas over Wanda Grigsby.

Director Curtis Johnson awarded the lowest score to Ms. Grigsby between herself and Mr.

Thomas.  Despite the fact that Mr. Johnson noted that Mr. Thomas "struggle[d] with Act 393,"

Johnson still awarded Mr. Thomas a perfect score of 24.  (**Defendant's Exhibit 17, Doc. # 26-17,

p. 3**).  Ms. Bryant and Ms. D'Abadie were of the opinion that only one point separated Thomas

and Grigsby, with Currillo believing that both candidates were equal. Mr. Johnson rated Ms. Grigsby six (6) points below that of Mr. Thomas, which raises a question of a possible bias against Ms. Grigsby.  As a negative, Mr. Johnson noted Ms. Grigsby was nervous throughout the entire interview; however, none of the other raters indicated this.  As a positive, Mr. Johnson did mention the fact that Ms. Grigsby took over the leadership of the security department when Mr. Bowers left.  (**Defendant's Exhibit 17, Doc. # 26-17, p. 8**).  Ms. Grigsby stated that she believed her interview went well, with the exception of messing up on one question.  (**Grigsby's depo., pp. 85-88**).  Again, the only thing that Mr. Johnson noted abut Mr. Thomas was the fact that he struggled with Act 393, which is a negative, but still awarded him a perfect score of 24.  When Ms. Grigsby wanted to hire a female employee, who met all of the qualifications to become a security officer, Mr. Johnson vetoed Ms. Grigsby's decision, telling her that this female employee was not a "good fit."  (**Grigsby's depo., pp. 76-79, 94-95**).

"The Courts have held that due to past discriminatory practices, 'heighten scrutiny' is required when looking at the employment decision, especially when that decision was "subjective" and was made by members outside the protected group."  Thurman v. Yellow Freight Systems, Inc., 90 F.3d 1160, 1167 (6th Cir. 1996); Bruhwiler v. University of Tennessee, 859 F.2d 419, 421 (6th Cir. 1988); Chang v. University of Rhode Island, 606 F.Supp. 1161, 1183-84 (D.R.I. 1985).  "When combined with other evidence of discrimination, the subjectivity of the employer's articulated reasons can support a finding that the employer's reasons were pretext for unlawful discrimination."  Coble v. Hot Springs School District No. 6, 682 F.2d 721, 726-727 (8th Cir. 1982).  "An employer's reliance on such subjective factors are to be 'closely scrutinized for discriminatory abuse.'" O'Conner v. Peru State College, 781 F.2d 632, 637-38 (8th Cir. 1986); *see also*, Twiggs v. Selig, 679 F.3d 990, 994 (8th Cir. 2012).

"A plaintiff may demonstrate pretext by showing that a discriminatory motive more than likely motivated the employer, or that the employer's explanation is unworthy of credence." Harrington v. Harris, 108 F.3d 598, 606 (5th Cir. 1997), *citing* Amburgey v. Cohart Refractories Corp., Inc., 936 F.2d 805, 813 (5ht Cir. 1991).  "Disparate treatment arises when an employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin. . . ."  Bonilla v. Oakland Scavenger Co., 31 FEP 50, 53 (9th Cir. 1983), *quoting*, International Brotherhood of Teamsters v. United States, 431 U.S. 324, 335-36 n. 15, 14 FEP Cases 1514 (1977).

> In a race discrimination case, a plaintiff may survive a defendant's motion for summary judgment in one of two ways.  The plaintiff may present admissible evidence directly indicating unlawful discrimination, that is, evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action.  *Russell v. City of Kan. City, Mo.*, 414 F.3d 863, 866 (8th Cir. 2005).  Alternatively, if the plaintiff lacks such evidence of discrimination, she may survive the defendant's motion for summary judgment by creating an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Fields v. Shelter Mutual Insurance Co., 520 F.3d 859, 863-864 (8th Cir. 2008).

"We believe it is common business practice to pick the best qualified candidate for promotion. When that is not done, a reasonable inference arises that the employment decision was based on something other than the relative qualifications of the applicants."  McCullough v. Real Foods, Inc., 140 F.3d 1123, 1128 (8th Cir. 1998).

Ms. Grigsby has presented sufficient evidence that could allow a reasonable fact-finder to conclude that she was the victim of discrimination based on her sex, when she was not selected for the facilitator's position.  Ms. Grigsby has previously served in that role, when Mr. Bowers resigned.  Ms. Bowers had extensive work experience, conducting training for the district,

supervising employees, and had more years' experience than Mr. Thomas.  Despite Ms. Grigsby's

preeminent qualifications, the defendant decided to select a lesser qualified male candidate.

      D.  <u>Americans with Disabilities Act</u>

      The plaintiff contends that the defendant violated the Americans with Disabilities Act (42

U.S.C.S. § 12101, *et seq.*), when they failed to promote her to the position as facilitator and refused

to allow her a reasonable accommodation.   Furthermore, the defendant refused to engage in the

interactive process with the plaintiff, once she requested a reasonable accommodation.

> The ADA prohibits employers from discriminating 'against a qualified individual
> with a disability because of the disability of such individual.' 42 U.S.C. § 12112(a).
> To establish a claim under the ADA, a plaintiff must show 'that he has a disability
> as defined in 42 U.S.C. § 12102(2); that he is qualified to perform the essential
> functions of the job, with or without reasonable accommodations; and that he has
> suffered adverse employment action because of his disability.' *Benson v. Northwest
> Airlines, Inc*., 62 F.3d 1108, 1112 (8th Cir. 1995) (citing *Wooten*, 58 F.3d at 385).
> 'Disability' is defined as '(A) a physical or mental impairment that substantially
> limits one or more of the major life activities of such individual; (B) a record of
> such an impairment; or (C) being regarded as having such an impairment.' 42
> U.S.C. § 12102(2).

<u>Gutridge v. Clure</u>, 153 F.3d 898, 900 (8th Cir. 1998).

> The ADA prohibits an employer from discriminating against 'a qualified individual
> with a disability because of the disability.' 42 U.S.C. § 12112.  To avoid summary
> judgment dismissing the ADA claim, Moore must show that at the time in question
> she was disabled, she was nonetheless qualified to perform the essential functions
> of her job with or without reasonable accommodation, and she suffered an adverse
> employment decision because of her disability.

<u>Moore v. Payless Shoe Source, Inc.</u>, 139 F.3d 1210, 1212 (8th Cir. 1998), *citing* <u>Price v.

S−B Power Tool</u>, 75 F.3d 362, 365 (8th Cir.), *cert. denied*, ___ U.S. ___, 117 S.Ct. 274, 136

L.Ed.2d 197 (1996).   "An impairment is 'substantially limiting' if it renders an individual unable

to perform a major life activity that the average person in the general population can perform, or

if it significantly restricts the condition, manner, or duration under which an individual can perform

a particular major life activity as compared to an average person in the general population. 29

C.F.R. § 1630.2(j)(1)(i)-(ii)." <u>Fjellestad v. Pizza Hut of America, Inc.</u>, 188 F.3d 944, 948-49 (8th Cir. 1999).

The plaintiff contends that the defendant violated the Americans with Disabilities Act (42 U.S.C.S. § 12101, *et seq.*), when they failed to promote her and failed to provide reasonable accommodations for her.

> The ADA prohibits employers from discriminating 'against a qualified individual with a disability because of the disability of such individual.' 42 U.S.C. § 12112(a). To establish a claim under the ADA, a plaintiff must show 'that he has a disability as defined in 42 U.S.C. § 12102(2); that he is qualified to perform the essential functions of the job, with or without reasonable accommodations; and that he was suffered adverse employment action because of his disability.' *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1112 (8th Cir. 1995) (citing *Wooten*, 58 F.3d at 385). 'Disability' is defined as '(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.' 42 U.S.C. § 12102(2).

 <u>Gutridge v. Clure</u>, 153 F.3d 898, 900 (8th Cir. 1998).

> The ADA prohibits an employer from discriminating against 'a qualified individual with a disability because of the disability.' 42 U.S.C. § 12112.  To avoid summary judgment dismissing the ADA claim, Moore must show that at the time in question she was disabled, she was nonetheless qualified to perform the essential functions of her job with or without reasonable accommodation, and she suffered an adverse employment decision because of her disability.

<u>Moore v. Payless Shoe Source, Inc.</u>, 139 F.3d 1210, 1212 (8th Cir. 1998), *citing* <u>Price v. S−B Power Tool</u>, 75 F.3d 362, 365 (8th Cir.), *cert. denied*, ___ U.S. ___, 117 S.Ct. 274, 136 L.Ed.2d 197 (1996).   "To obtain relief under the ADA, an aggrieved employee must establish that he has a disability as defined in 42 U.S.C. § 12102(2); that he is qualified to perform the essential functions of the job, with or without reasonable accommodation; and that he has suffered adverse employment action because of his disability."  <u>Benson v. Northwest Airlines, Inc.</u>, 62 F.3d 1108, 1112 (8th Cir. 1995).  The court went on to hold that "[o]nce the plaintiff makes 'a facial showing that reasonable accommodation is possible,' the burden of production shifts to the employer to

show that it is unable to accommodate the employee.  62 F.3d at 1112, *citing* <u>Mason v. Frank</u>, 32 F.3d 315, 318-19 (8th Cir. 1994).

There seems to be little debate about whether the plaintiff is disabled.  "To be regarded as disabled under the ADA, Brunko would have to show that Mercy mistakenly believed that she had a physical impairment that substantially limited one or more major life activities, or Mercy mistakenly believed that she had an actual, nonlimiting impairment which substantially limited one or more major life activities."  260 F.3d at 942, *citing* <u>Sutton v. United Air Lines, Inc</u>., 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999).   Pursuant to 42 U.S.C.S. § 12102(2),

As used in this Act:

(2) Disability.  The term 'disability' means, with respect to an individual -

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having an impairment.

"A plaintiff may show that he is disabled within the meaning of the ADA by demonstrating that he is 'regarded as' having an impairment that 'substantially limits one or more of [his] major life activities."  <u>Pugh v. City of Attica, Indiana</u>, 259 F.3d 619, 626 (7th Cir. 2001).  The Court held that *Brunko* was not regarded as being disabled because they offered her an opportunity to apply for other jobs, which would be more conducive to her *permanent* lifting restriction.   Certainly, the plaintiff was regarded as having a disability.

Under the regulations promulgated by the EEOC, the 'regarded as' language means:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) Has none of the impairments defined in paragraphs (h)(1) or (2) of [§ 1630.2] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l).  *See Burch v. Coca Cola Co.*, 119 F.3d 305, 322 (5th Cir. 1997); Bridges v. City of Bossier, 92 F.3d 329, 332 (5th Cir. 1996).  In *Bridges*, the court held that in order for an employer to have regarded an impairment as substantially limiting in the activity of working, the employer must regard an individual as significantly restricted in the ability to perform a class or broad range of jobs.  *Bridges*, 92 F.3d at 332.

Sherrod v. American Airlines, Inc., 132 F.3d 1112 (5th Cir. 1998).

The plaintiff was told that due to her arm, she would not be allowed to supervise anyone. Mr. Brewer made the statement that the plaintiff would not supervise anyone because "her arm was messed up."  (**Grigsby's depo., p. 93**).  Mr. Brewer also advised Ms. Grigsby that she did not get the position because her arm was "messed up."  (**Grigsby's depo., p. 54**).  True to form, Ms. Grigsby was not selected for the position.   This is really direct evidence of discrimination.

'Alternatively, Gagnon can proceed under the mixed-motive standard set forth in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), if he is able to produce 'direct evidence that an illegitimate criterion . . .' played a motivating part in [the] employment decision.'" Cronquist v. City of Minneapolis, 237 F.3d 920, 924 (8th Cir. 2001), (alterations in original) (quoting Price Waterhouse, 490 U.S. at 258). Once Gagnon establishes such direct evidence, the burden shifts to Sprint PCS to demonstrate by a preponderance of the evidence that it would have reached the same employment decision absent any discrimination." *Cronquist*, 237 F.2d at 924. As modified by section 107 of the Civil Rights Act of 1991, 42 U.S.C. § 2000e-5(b)(2), the mixed-motive allows for declaratory relief, injunctive relief, attorney's fees and costs once Gagnon meets his initial burden regarding direct evidence.  42 U.S.C. § 2000e-5(g)(2)(B)(i).  Thus, Sprint PCS is liable for discrimination under this model upon direct evidence that it acted on the basis of a discriminatory motive."  Breeding v. Gallagher and Co., 164 F.3d 1151, 1156 (8th Cir. 1999). *Whether or not Sprint PCS satisfies its burden to show by a preponderance that it would have reached the same employment decision absent any discrimination is only relevant to determine whether the court may award full relief including*

> *damages, court order admissions, reinstatement, hiring, promotion or other such relief.*"  Id.; 42 U.S.C. § 2000e-5(g)(2)(A) & (B)(ii).

Gagnon v. Sprint Corporation, 284 F.3d 839, 847-848 (8th Cir. 2002).

> Plaintiffs may prove discrimination in Title VII claims in two ways: with direct evidence as in the Price Waterhouse approach, or with indirect evidence as in the McDonald Douglas analysis.  *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004).  Kratzer may proceed under *Price Waterhouse* if she produces direct evidence of conduct or statements by persons involved in the decision-making process, which indicates a discriminatory attitude was more likely than not a motivating factor in the employer's decision.  *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S. Ct. 1775, 104 L. Ed.2d 268 (1989).  If there is direct evidence of sex discrimination, the burden rests with the employer to show that it more likely than not would have made the same decision without consideration of the illegitimate factor.  *Id.*  Evidence of the employer's motives for the action, and whether the presence of a mixed motives defeats the plaintiff's claim, is a trial issue, not intended for summary judgment.  *Griffith*, 387 F.3d at 735.

Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1046 (8th Cir. 2005).

As further evidence of discrimination, when the plaintiff was requesting a reasonable accommodation in 2017 after injuring her arm, Bennie Bowers, did not want to provide this accommodation by allowing her light duty status.  The plaintiff was still being forced to type, and perform other duties that were causing her problems.  The plaintiff was simply asking for a reasonable accommodation.  Melody Tipton had to remind the district that it had provided "accommodated restrictive duty" for employees in the past, why could it not do the same for Ms. Grigsby?  (**Defendant's Exhibit 9, Doc. # 26-9**).    Ms. Grigsby was asked by Jeff Bradford to be allowed a reasonable accommodation for him, after having two (2) service injury disabilities, by having him placed at the elementary school, where he could deal with smaller children, and not have to deal with older children at the middle school, where he worked.  (**See Plaintiff's Exhibit "E"**).   Ms. Grigsby stated that she gave this request to Paul Brewer, Curtis Johnson, and Dave Thomas, and the accommodation was allowed.  (**Grigsby's depo., pp. 92-93**).

When the plaintiff informed her employer that she was pregnant, the supervisor sighed and stated, "What are you going to do about the pregnancy, are you going to keep it?"  The Court held that this statement, coupled with the fact that the plaintiff was terminated the following day, is direct evidence of discrimination.  "Direct evidence for these purposes include evidence of 'remarks of the employer that reflect a discriminatory attitude,' as well as 'comments which demonstrate a discriminatory animus in the decisional process or those uttered by individuals closely involved in employment decisions." Roberts v. ParkNicollet Health Services, et al., United States Court of Appeals (No. 07-1738), *citing*, EEOC v. Liberal R-11 School District, 314 F.3d 920, 923 (8th Cir. 2002).

> 'The ADA defines 'reasonable accommodation' as:
>
> job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B).  To determine whether an accommodation for the employee is necessary, and if so, what that accommodation might be, it is necessary for the employer and employee to engage in an 'interactive process.' *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 951 (8th Cir. 1999); *Cravens v. Blue Cross and Blue Shield of Kansas City*, 214 F.3d 1011, 1021 (8th Cir. 2000).

> A disabled employee must demonstrate the following factors to show that an employer failed to participate in the interactive process: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*Fjellestad*, 188 F.3d at 952 (citation omitted).

Peyton v. Fred's Stores of Arkansas, Inc., 561 F.3d 900, 902 (8th Cir. 2009).

E.  Retaliation

Wanda Grigsby also contends that due to her filing a discrimination complaint both internally, and with the EEOC, she was the victim of retaliation.  Ms. Grigsby filed her claim with the EEOC on April 3, 2018, contending that she was the victim of sexual harassment as committed by Bennie Bowers.  (**Grigsby's depo., p. 56**).  In May 2018, she applied for one of the two (2) facilitator's positions.  (**Grigsby's depo., p. 59**).  Ms. Grigsby signed the settlement agreement on June 9, 2018.  Due to the EEOC complaint, Mr. Bowers was forced to resign.  (**Grigsby's depo., p. 57**).  The PCSSD conducted interviews for the position on August 16, 2018, and the school district selected Mr. Thomas for the facilitator's position on August 30, 2018.

"In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  Burlington Northern & Santa Fe Railway Co. v. White, No. 05-259, 2006 WL 1698953, at *11 (U. S. Supreme Ct., June 22, 2006), *citing* Rochon v. Gonzales, 438 F.3d 1211, 1213 (C.A.D.C. 2006), *quoting*, Washington v. Illinois Dept. of Revenue, 420 F.3d 658, 662 (7th Cir. 2005).

"To establish a prima facie case of retaliation under Title VII, a plaintiff must show: (1) that she engaged in protected activity; (2) that adverse employment action occurred; and (3) a causal connection between the two."  Kobrin v. University of Minnesota, 34 F.3d 698, 704 (8th Cir. 1994), *citing*, Jackson v. Missouri Pac. R.R., 803 F.2d 401, 406-07 (8th Cir. 1986) and Womack v. Munson, 619 F.2d 1292, 1296 (8th Cir. 1980), *cert. denied*, 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814 (1981).  The employer must then articulate a legitimate, nondiscriminatory reason for the adverse action, then the employee must be given an opportunity to show that the proffered reason was pretextual, and that their protected activity was the true reason. *See* Smith v.

Riceland Foods, Inc., 151 F.3d 813, 818 (8th Cir. 1998).  "This court has recognized the established rule that `an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for a different reason, would have been proper.'" Madewell v. Roberts, 909 F.2d 1203, 1206 (8th Cir. 1990).  "We emphasize that the alleged manifestations of defendants' retaliation (such as less favorable treatment) need not themselves amount to constitutional violations.  The violation lies in the **intent** to impede access to the courts." Madewell v. Roberts, 909 F.2d 1203, 1206-1207 (8th Cir. 1990), *citing* Sanders v. St. Louis County, 724 F.2d 665, 666 (8th Cir. 1983).

> To establish a prima facie case of retaliation, a plaintiff must show, among other things, that she suffered an adverse employment action at the hands of her employer.  *See Montando v. Farmland Industry, Inc.*, 116 F.3d 355, 359 (8th Cir. 1997).  An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage.  *See Cossette v. Minn. Power & Light*, 188 F.3d 964, 972 (8th Cir. 1999).  Termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects meet this standard, *see Kerns v. Capital Graphics, Inc*., 178 F.3d 1011, 1016 (8th Cir. 1999), but minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not, *see Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997).

Spears v. Missouri Department of Corrections and Human Resources, 210 F.3d 850, 853 (8th Cir. April 28, 2000).

In the case at bar, the plaintiff certainly has presented evidence that she was the victim of retaliation.  The plaintiff participated in protected activity by filing first a complaint of discrimination with the PCSSD complaining about sexual harassment in early 2018.  The plaintiff then filed a Charge of Discrimination with the EEOC on April 3, 2018 alleging sexual harassment. Shortly thereafter, the parties agreed to mediation, which resulted in a settlement.  While the settlement process was going on, the plaintiff applied for one of the facilitator's position in May 2018.  The parties signed the settlement agreement on June 8, 2018.  The plaintiff suffered an

adverse employment action, when on August 30, 2018, she was not selected for the position.  "An inference of a causal connection between a charge of discrimination and termination can be drawn from the timing of the two events, *Riceland*, 151 F.3d at 819-20; *Smith v. St. Louis University*, 109 F.3d 1261, 1266 (8th Cir. 1997), but in general more than a temporal connection is required to present a genuine factual issue on retaliation, *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (*en banc*)." Peterson v. Scott County, et al., 406 F.3d 515, 524 (8th Cir. 2005).  The Eighth Circuit also said, "[b]ut this much is clear: temporal proximity rises in significance the closer the adverse activity occurs to the protected activity.  The farther in proximity the decision to terminate is from the protected activity, the less suspect the decision to terminate becomes." E.E.O.C. v. Kohler Co., 335 F.3d 766, 774 (8th Cir. 2003).

The plaintiff was performing the job of facilitator when Mr. Bowers had resigned.  The plaintiff has demonstrated that she has been a devoted employee to the district, despite her on the job injury that resulted in a disability.  The plaintiff was able to perform the work of the facilitator, despite her injured arm.  "All courts have recognized that the question facing triers of fact in discrimination cases is both sensitive and difficult.  The prohibition against discrimination contained in the Civil Rights Act of 1964 reflect an important national policy.  There will seldom be 'eyewitness' testimony as to the employer's mental processes." U. S. Postal Service Board of Governs v. Aikens, 460 U.S. 711, 75 L.Ed.2d 403, 409, 103 S.Ct. 1478 (1983). "As overtly bigoted behavior has become more unfashionable, evidence of intent has become harder to find.  But this does not mean that racial discrimination has disappeared. *Village of Arlington Heights II*, 558 F.2d 1283, 1290 (7th Cir. 1977), *cert. denied*, 434 U.S. 1025, 98 S.Ct. 752, 54 L.Ed.2d 772 (1978).  It means that when a discriminatory effect is present, the courts must be alert to recognize means

that are subtle and explanations that are synthetic." Robinson v. 12 Lofts Realty, Inc., 610 F.2d

1032, 1043 (2nd Cir. 1979).

> The Court has recognized that in enacting the 1866 Act, Congress took aim at
> discrimination in employment, from whatever source. Discrimination must be
> eliminated if the 'badges and incidents' of slavery are to be fully eradicated,
> particularly within the context of employment:
>> Racial discrimination in all areas, and particularly in the areas of
>> education and employment, is a devastating and reprehensible
>> policy that must be vigilantly pursued and eliminated from our
>> society:
>>> Racial discrimination can be the most virulent of
>>> strains that infect a society and the illness in any
>>> society so affected can be quantified. Exposure to
>>> embarrassment, humiliation, and the denial of basic
>>> respect can and do cause psychological trauma to its
>>> victims. The disease must be recognized and
>>> vigorously eliminated wherever it occurs. But racial
>>> discrimination takes its most malevolent form when
>>> it occurs in employment, for prejudice here not only
>>> has an immediate economic effect, it has a
>>> fulminating integrant that perpetuates the pestilences
>>> of degraded housing, unsatisfactory neighborhood
>>> amenities, and unequal education.

Edwards v. Jewish Hospital of St. Louis, 855 F.2d 1345, 1349 (8th Cir. 1988), *quoting*, General

Building Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 413, 102 S.Ct. 3141, 3161-62, 73

L.Ed.2d 835 (1982).

In conclusion, the Court should deny the defendant's motion for summary judgment. The

plaintiff has presented sufficient evidence that could allow a reasonable fact-finder to conclude

that she was the victim of discrimination based on her sex, disability, and was further the victim

of retaliation when she was not selected for the facilitator's position. The evidence demonstrated

that despite the fact that the plaintiff has superior qualifications than Dave Thomas, and had

previously operated in the capacity as a facilitator, she was denied this position, based on her sex,

disability, and in retaliation for having complained about prior acts of discrimination.  Therefore,

the Court should deny the defendant's motion for summary judgment.

Respectfully submitted,

Austin Porter Jr., No. 86145
PORTER LAW FIRM
323 Center Street, Suite 1035
Little Rock, Arkansas 72201
Telephone: 501-244-8200
Facsimile: 501-372-5567
Email: Aporte5640@aol.com

## CERTIFICATE OF SERVICE

I, Austin Porter Jr., do hereby certify that a copy of the foregoing pleading was electronically filed with the Clerk of the United States District Court for the Eastern District of Arkansas-Western Division, on this 30th  day of April 2021, using the CM/ECF system, which is designed to send notification of such filing to the following:

Jay Bequette
W. Cody Kees
T. "Teddy" Stewart
BEQUETTE, BILLINGS & KEES, P.A.
425 W. Capitol Avenue, Suite 3200
Little Rock, Arkansas 72201

jbequette@bbpalaw.com
ckees@bbalaw.com
tstewart@bbpallaw.com

Austin Porter Jr.