**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**WANDA GRIGSBY**                                                                                    **PLAINTIFF**

**v.**                                              **Case No. 4:19-cv-00778-LPR**

**PULASKI COUNTY SPECIAL SCHOOL DISTRICT**                              **DEFENDANT**

## <u>ORDER</u>

On November 4, 2019, Plaintiff Wanda Grigsby filed a Complaint in the Eastern District of Arkansas.[1]  On September 9, 2020, Ms. Grigsby filed an Amended Complaint.[2]  She alleges that Defendant Pulaski County Special School District ("PCSSD") unlawfully discriminated against her based on her sex and her disability.[3]  She further asserts that PCSSD retaliated against her "for having opposed discriminatory practices."[4]  Ms. Grigsby also seeks relief "under 42 U.S.C. § 1983," because PCSSD was "acting under color of law."[5]  And Ms. Grigsby requests that the Court "declare the rights and other legal relations between the parties" under 28 U.S.C. § 2201.[6]

On March 26, 2021, PCSSD filed a Motion for Summary Judgment.[7]  That Motion is now before the Court.  For the reasons explained below, the Court will grant PCSSD's Motion for Summary Judgment.

---

[1]   Pl.'s Compl. (Doc. 1).

[2]   Pl.'s Am. Compl. (Doc. 15).

[3]   *Id.* at 1.

[4]   *Id.*

[5]   *Id.*

[6]   *Id.*

[7]   Def.'s Mot. for Summ. J. (Doc. 26).

**Background**

On summary judgment, the Court views the facts in the light most favorable to the nonmoving party and affords her all reasonable inferences.[8]  This background section is based mostly on undisputed facts.  When a fact is genuinely disputed, the Court adopts the version of the genuinely disputed fact that is most favorable to Ms. Grigsby.  Accordingly, the facts set forth in this background section are only applicable in the context of summary judgment and do not necessarily represent what a jury would find at trial.

Ms. Grigsby started working for PCSSD as a security officer in August 2012.[9]  In July 2015, Ms. Grigsby was promoted to "Safety and Security Training Officer."[10]  Her projected annual salary was $67,071.[11]  It appears that Ms. Grigsby held this position and salary for the 2015-2016 school year, and for the 2016-2017 school year.[12]

In April 2017, PCSSD notified Ms. Grigsby that her position as Safety and Security Training Officer was subject to non-renewal due to a "District-wide reduction in force."[13]  A few days later, in May 2017, a physical therapy dummy fell on Ms. Grigsby and injured her right arm.[14]  Shortly thereafter, Ms. Grigsby filed for Workers' Compensation.[15]  Ms. Grigsby continued to work despite her injury.  But sometime during the summer of 2017, Ms. Grigsby requested that she be placed on either limited duty status or one-arm duty status.[16]  Her requests were formally

---

[8]  *Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1115 (8th Cir. 2018).

[9]  Pl.'s Resp. to Def.'s Statement of Facts (Doc. 32) ¶ 2.

[10]  *Id.* ¶ 3.

[11]  Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 26-2) at 1.

[12]  Ex. 1 to Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. (Doc. 33-1) at 10-11; *see also* Ex. 2 to Def.'s Mot. for Summ. J. (Doc. 26-2); Ex. 3 to Def.'s Mot. for Summ. J. (Doc. 26-3).

[13]  Pl.'s Resp. to Def.'s Statement of Facts (Doc. 32) ¶ 4.

[14]  Ex. 5 to Def.'s Mot. for Summ. J. (Doc. 26-5).

[15]  Pl.'s Resp. to Def.'s Statement of Facts (Doc. 32) ¶ 6; *see also* Ex. 5 to Def.'s Mot. for Summ. J. (Doc. 26-5).

[16]  Pl.'s Resp. to Def.'s Statement of Facts (Doc. 32) ¶ 11; Ex. 9 to Def.'s Mot. for Summ. J. (Doc. 26-9) at 1-2.

denied by Bennie Bowers, the Director of Security.[17]  Mr. Bowers claimed that the District did not provide "a light duty status for employees."[18]  But Ms. Grigsby indicates that Mr. Bowers did informally place Ms. Grigsby on light duty status.[19]  And Ms. Grigsby's Workers' Compensation claim was ultimately approved.  In November 2017, PCSSD's Workers' Compensation insurance covered the cost of surgery for Ms. Grigsby's right arm.[20]

In the meantime, Ms. Grigsby's employment term ended, and her position was non-renewed as described above.  Shortly thereafter, in July 2017, Ms. Grigsby began working for PCSSD as an "Administrative Sergeant."[21]  Her projected annual salary as an Administrative Sergeant was $50,068.80.[22]  PCSSD asserts that this position was offered to Ms. Grigsby under the recall provisions of the District's reduction in force policy.[23]  Ms. Grigsby asserts that she was demoted due to budget cuts, not recalled under the reduction in force policy.[24]  This dispute is not material.[25]

Fast forward nearly one year.  On April 3, 2018, Ms. Grigsby filed an EEOC complaint against her then-supervisor, Bennie Bowers.[26]  The complaint alleged that Mr. Bowers sexually

---

[17]  Ex. 9 to Def.'s Mot. for Summ. J. (Doc. 26-9) at 1-2.  Mr. Bowers was the head of the Security Department.

[18]  *Id.* at 2.

[19]  Ex. 1 to Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. (Doc. 33-1) at 35.

[20]  *Id.* at 6.  In April 2018, Ms. Grigsby underwent a "functional capacity exam and impairment rating evaluation" with Doctor Clayton Riley.  Ex. 14 to Def.'s Mot. for Summ. J. (Doc. 26-14).  Doctor Riley reported that Ms. Grigsby's functional capacity could not be determined because Ms. Grigsby did not put forth a reliable effort.  *Id.* Doctor Riley explained that it was "impossible for [him] to assess [Ms. Grigsby's] condition or progress" due to Ms. Grigsby's lack of effort, and that Ms. Grigsby failed to attend associated medical examinations.  *Id.*

[21]  Ex. 3 to Def.'s Mot. for Summ. J. (Doc. 26-3).

[22]  *Id.*

[23]  Def.'s Statement of Facts (Doc. 28) ¶¶ 4-5.

[24]  Pl.'s Resp. to Def.'s Statement of Facts (Doc. 32) ¶¶ 4-5.

[25]  Ms. Grigsby does not allege any claims relating to her transition to Administrative Sergeant.

[26]  Ex. 7 to Def.'s Mot. for Summ. J. (Doc. 26-7) at 1.

harassed Ms. Grigsby between October 3, 2017 and April 3, 2018.[27]  For example, on more than one occasion, Mr. Bowers requested that Ms. Grigsby remove her jacket before meetings.[28]  Mr. Bowers did not request male officers to do the same.[29]  On April 17, 2018, as a result of Ms. Grigsby's EEOC complaint, Mr. Bowers submitted his resignation from the Director position in the Department of Safety and Security.[30]  His last day was May 15, 2018.[31]  Shortly after Mr. Bowers resigned, PCSSD and Ms. Grigsby settled her EEOC complaint through mediation.[32]  The settlement agreement was signed on June 19, 2018.[33]

In May 2018, Ms. Grigsby learned that PCSSD was not renewing three positions above her position—two "Coordinator" positions and a "Director" position.[34]  Instead of renewing these positions, PCSSD planned to hire two "Facilitator[s] of Safety and Security."[35]  Approximately thirteen out of fifteen of a Coordinator's "Performance Responsibilities" overlapped with the "Performance Responsibilities" for the new Facilitator positions.[36]  Only one or two of an Administrative Sergeant's "Performance Responsibilities" overlapped with the "Performance Responsibilities" for the new Facilitator positions.[37]

The Director position was held by Mr. Bowers until he resigned in May.[38]  The two

---

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] Ex. 2 to Def.'s Reply to Pl.'s Resp. (Doc. 34-2) at 2; Ex. 1 to Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. (Doc. 33-1) at 8.

[31] Ex. 2 to Def.'s Reply to Pl.'s Resp. (Doc. 34-2) at 2.

[32] Pl.'s Resp. to Def.'s Statement of Facts (Doc. 32) ¶ 7.

[33] Ex. 1 to Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. (Doc. 33-1) at 23.

[34] Pl.'s Resp. to Def.'s Statement of Facts (Doc. 32) ¶ 9.  The Coordinators reported to the Director.

[35] *Id.*; *see also* Ex. 10 to Def.'s Mot. for Summ. J. (Doc. 26-10).

[36] *Compare* Ex. 15 to Def.'s Mot. for Summ. J. (Doc. 26-15), *with* Ex. 10 to Def.'s Mot. for Summ. J. (Doc. 26-10).

[37] *Compare* Ex. 16 to Def.'s Mot. for Summ. J. (Doc. 26-16), *with* Ex. 10 to Def.'s Mot. for Summ. J. (Doc. 26-10).

[38] Ex. 1 to Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. (Doc. 33-1) at 12, 15, 17-18.

Coordinator positions were held by Gerald Tatum and David Thomas.[39]  On June 5, 2018, Ms. Grigsby applied for the two open Facilitator positions.[40]  On July 1, 2018, Mr. Thomas's and Mr. Tatum's positions were non-renewed.[41]  From July 1, 2018 to August 28, 2018, Ms. Grigsby assumed all of the responsibilities formerly associated with the Coordinator positions.[42]  On July 5, 2018, PCSSD hired Mr. Thomas in a temporary capacity as a "Security Fire Alarm Responder."[43]  It appears that Mr. Tatum was also hired in a temporary capacity shortly after his Coordinator position was non-renewed.[44]  Like Ms. Grigsby, Mr. Thomas and Mr. Tatum also applied for the new Facilitator positions.[45]

In total, there were nine applicants for the new Facilitator positions, three females and six males.[46]  On August 16, 2018, the applicants were interviewed by a multi-racial interview committee consisting of Curtis Johnson (Executive Director of Operations), Roberto Carrillo (Custodial and Grounds Supervisor), Loria Bryant (District Pre-K Program Bookkeeper), and Cynthia D'Abadie (Energy Management System Scheduler).[47]  The interview committee scored Mr. Tatum a 93 out of 96, the highest composite score of all applicants.[48]  The next highest score

---

[39]  *Id.*  It is clear from the other documents in the record that what Ms. Grigsby calls "captain" positions are actually the Coordinator positions.  *See, e.g.*, Pl.'s Resp. to Def.'s Statement of Facts (Doc. 32) ¶¶ 12-14.

[40]  Ex. 8 to Def.'s Mot. for Summ. J. (Doc. 26-8).

[41]  Pl.'s Resp. to Def.'s Statement of Facts (Doc. 32) ¶ 9; Ex. 1 to Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. (Doc. 33-1) at 18.

[42]  Ex. 1 to Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. (Doc. 33-1) at 39.

[43]  Ex. 3 to Def.'s Reply to Pl.'s Resp. (Doc. 34-3) at 1; *see also* Ex. 1 to Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. (Doc. 33-1) at 18.

[44]  Ex. 1 to Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. (Doc. 33-1) at 18; *see also* Ex. 12 to Def.'s Mot. for Summ. J. (Doc. 26-12).

[45]  Ex. 13 to Def.'s Mot. for Summ. J. (Doc. 26-13).

[46]  *Id.* at 2.

[47]  *Id.* at 1; Ex. 17 to Def.'s Mot. for Summ. J. (Doc. 26-17) at 1-4.

[48]  *Id.*  Ms. Grigsby disputes the fairness of the committee's scores.  Pl.'s Resp. to Def.'s Statement of Facts (Doc. 32) ¶ 16.  But whether the committee's scores fairly represent the quality of the candidates is distinct from the actual score awarded.  There is no dispute that the committee awarded Mr. Tatum the highest score.

was a 92 out of 96, which was awarded to Mr. Thomas.[49]  As indicated above, Mr. Tatum and Mr.

Thomas were Ms. Grigsby's superiors prior to their positions being non-renewed.  In fact, the new

Facilitator positions were created to replace Mr. Tatum's and Mr. Thomas's Coordinator positions

(as well as the even higher Director position).  Ms. Grigsby received the third highest score from

the interview committee, an 84 out of 96.[50]

Curtis Johnson, Loria Bryant, and Cynthia D'Abadie all scored Mr. Thomas higher than

Ms. Grigsby.[51]  Roberto Carrillo scored Ms. Grigsby and Mr. Thomas even.[52]  Curtis Johnson's

scores represent the largest disparity of scores between Ms. Grigsby and Mr. Thomas.[53]  Curtis

Johnson scored Mr. Thomas a perfect 24 of 24, despite noting that Mr. Thomas struggled with

"Act 393."[54]  On the other hand, Curtis Johnson scored Ms. Grigsby an 18 out of 24.[55]  Ms. Grigsby

acknowledged in her deposition testimony that, only days or weeks before the interview, she "did

a wrong thing by Mr. Johnson" by hiring a "temp worker" that "Mr. Johnson knew . . . outside of

PCSSD."[56]  This occurred within the range of time that Ms. Grigsby was exercising (at least

informal) interim authority as a Coordinator.[57]

---

[49]  Ex. 13 to Def.'s Mot. for Summ. J. (Doc. 26-13) at 1.  Ms. Grigsby disputes the fairness of the committee's scores. Pl.'s Resp. to Def.'s Statement of Facts (Doc. 32) ¶¶ 16-17.  But whether the committee's scores fairly represent the quality of the candidates is distinct from the actual score awarded.  There is no dispute that the committee awarded Mr. Thomas the second highest score.

[50]  Ex. 13 to Def.'s Mot. for Summ. J. (Doc. 26-13) at 1.  Ms. Grigsby disputes the fairness of the committee's scores. Pl.'s Resp. to Def.'s Statement of Facts (Doc. 32) ¶¶ 16-17.  But whether the committee's scores fairly represent the quality of the candidates is distinct from the actual score awarded.  There is no dispute that the committee awarded Ms. Grigsby the third highest score.

[51]  Ex. 13 to Def.'s Mot. for Summ. J. (Doc. 26-13) at 2.

[52]  *Id.*  Roberto Carrillo scored Mr. Tatum higher than Ms. Grigsby.  *Id.*

[53]  *Id.*

[54]  Ex. 17 to Def.'s Mot. for Summ. J. (Doc. 26-17) at 3.

[55]  *Id.* at 8.

[56]  Ex. 1 to Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. (Doc. 33-1) at 38.

[57]  *Id.* at 39.

Ultimately, the district hired Mr. Thomas as the only Facilitator.[58]  While Mr. Thomas remained in a supervisory capacity over the security department, he experienced a pay cut of over $20,000 as a result of the non-renewal of the Coordinator position and his subsequent acceptance of the Facilitator position.[59]  PCSSD gave little to no explanation as to why it ultimately hired only one Facilitator.[60]  What is clear, however, is that all of the applicants were equally surprised and confused with PCSSD's decision to only hire one Facilitator.[61]  Ms. Grigsby asked Paul Brewer, the Executive Director of Human Resources, why the second Facilitator position was not filled.[62]  Mr. Brewer didn't answer the question.  Instead, according to Ms. Grigsby, Mr. Brewer indicated his belief that she wouldn't have been selected for the position given her injured arm.[63]

Ms. Grigsby continued working as an Administrative Sergeant for PCSSD and under Mr. Thomas.  But Ms. Grigsby did not feel comfortable reporting to Mr. Thomas because Mr. Thomas was friends with Mr. Bowers, who was forced to resign as a result of Ms. Grigsby's original EEOC complaint.[64]  In the first two weeks of September 2019, Mr. Thomas made "statements" about Ms. Grigsby's injured arm.[65]  For example, Mr. Thomas would ask Ms. Grigsby how she was "going to work here with [her] arm?"[66]  Mr. Thomas would also remind Ms. Grigsby that, if she was going

---

[58]  Pl.'s Resp. to Def.'s Statement of Facts (Doc. 32) ¶ 12.  At the summary judgment hearing, PCSSD explained that Mr. Tatum retired shortly after this time period.  June 28, 2021 Hr'g Tr. at 23.

[59]  Pl.'s Resp. to Def.'s Statement of Facts (Doc. 32) at ¶ 15.

[60]  Ex. 1 to Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. (Doc. 33-1) at 20-21.

[61]  *Id.* at 20.

[62]  *Id.*

[63]  It is unclear whether this statement came directly from Mr. Brewer, whether another security officer told Ms. Grigsby that Mr. Brewer said she was not a viable option given her injury, or both.  *Compare id.* at 20, *with id.* at 46.

[64]  *Id.* at 8, 29.

[65]  *Id.* at 34; *see also* Ex. 7 to Def.'s Mot. for Summ. J. (Doc. 26-7) at 2.

[66]  Ex. 1 to Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. (Doc. 33-1) at 34.

to work for him, she was "going to have to get the job done."[67]  And Mr. Thomas would question why Ms. Grigsby was still there, suggesting that she was unable to do anything.[68]  Mr. Thomas also moved Ms. Grigsby's desk so that he could "watch [her] move [her] arm."[69]  And Mr. Thomas would "laugh at different things about just statements in general, which [Ms. Grigsby] didn't think . . . were funny at all."[70]  Finally, Mr. Thomas required Ms. Grigsby to type documents that could be written, and to work assignments she preferred not to work.[71]

On December 20, 2018, Ms. Grigsby filed a discrimination and retaliation claim with the EEOC.[72]  She asserted that she did not receive a promotion to the Facilitator position because of sex discrimination and in retaliation for having filed an EEOC complaint against her previous supervisor, Mr. Bowers.[73]  She also asserted that, between August 30, 2018 and September 14, 2018, Mr. Thomas mocked her on-the-job injury by moving her desk to watch her type, and by requiring her to type documents that did not require typing.[74]  But she did not allege that Mr. Thomas's conduct was continuing in nature.[75]

Sometime in early March 2019, Ms. Grigsby was "assaulted" by a parent of a student at Sylvan Hills Middle School.[76]  Her arm was re-injured in the assault, and she again applied for

---

[67] *Id.*

[68] *Id.*

[69] *Id.*; *see also* Ex. 7 to Def.'s Mot. for Summ. J. (Doc. 26-7) at 2.

[70] Ex. 1 to Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. (Doc. 33-1) at 34.

[71] *Id.* at 35-37; *see also* Ex. 7 to Def.'s Mot. for Summ. J. (Doc. 26-7) at 2.

[72] Ex. 7 to Def.'s Mot. for Summ. J. (Doc. 26-7) at 2.

[73] *Id.*

[74] *Id.*

[75] *Id.*

[76] Ex. 1 to Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. (Doc. 33-1) at 30-32.

Workers' Compensation.[77]  She never returned to work following this injury.[78]

On August 9, 2019, Ms. Grigsby received a right to sue letter from the EEOC.[79]  The letter informed Ms. Grigsby that the EEOC was not going to file suit on her behalf, and that she could file suit within 90 days of receipt of the letter.[80]  On November 4, 2019, Ms. Grigsby filed a *pro se* Complaint in this Court.[81]  By the time Ms. Grigsby amended her Complaint, she was represented by counsel.[82]

Ms. Grigsby resigned from PCSSD in January 2020.[83]

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[84]  The movant bears the initial burden of showing (1) the absence of a genuine dispute as to any material fact and (2) that a rational juror could not possibly find for the nonmoving party based on the undisputed facts.[85]  If the movant successfully makes this showing, the burden then shifts to the nonmoving party to establish that there is some genuine and material issue to be determined at trial.[86]  The nonmoving party may

---

[77]  *Id.* at 36.

[78]  *Id.*

[79]  Pl.'s Compl. (Doc. 1) at 2.  The letter was dated August 2, 2019.  Ex. 1 to Pl.'s Am. Compl. (Doc. 15-1) at 2.

[80]  Ex. 1 to Pl.'s Am. Compl. (Doc. 15-1) at 2.

[81]  Pl.'s Compl. (Doc. 1) at 1.

[82]  Pl.'s Am. Compl. (Doc. 15) at 7.

[83]  Ex. 1 to Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. (Doc. 33-1) at 29.

[84]  *MacKintrush v. Pulaski Cty. Sheriff's Dep't*, 987 F.3d 767, 769 (8th Cir. 2021) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)); *see also* FED. R. CIV. P. 56(a).

[85]  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[86]  *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997).

not rest solely upon the allegations in its pleadings.[87]   To survive summary judgment, the nonmoving party "must demonstrate the existence of specific facts" supported by sufficient probative evidence that would permit a favorable finding "on more than mere speculation, conjecture, or fantasy."[88]   If the nonmoving party can present specific facts by "affidavit, deposition, or otherwise, showing the existence of a genuine issue for trial," then summary judgment is not appropriate.[89]

Of course, the mere existence of a disputed fact will not bar summary judgment.[90]   The dispute must be genuine, which means the evidence could cause a rational juror to decide the particular question of fact for either party.[91]   And the disputed fact must be material, meaning the resolution of the disputed fact will (or at least may) be outcome determinative under the controlling law.[92]

The Court will resolve all genuine issues of material fact in the non-moving party's favor.[93] But the Court will not adopt a version of the facts that is blatantly contradicted by the record such that no rational juror could believe it.[94]

## **Discussion**

Ms. Grigsby's Complaint and Amended Complaint are less than helpful in identifying her

---

[87]  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).

[88]  *Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 739 (8th Cir. 2017) (quoting *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[89]  *Grey v. City of Oak Grove, Mo.*, 396 F.3d 1031, 1034 (8th Cir. 2005).

[90]  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989) (citation omitted).

[91]  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008); *Anderson*, 477 U.S. at 248.

[92]  *Holloway*, 884 F.2d at 366.

[93]  *Kohorst v. Smith*, 968 F.3d 871, 876 (8th Cir. 2020) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

[94]  *Id.*

causes of action.[95]  In fact, Ms. Grigsby's Amended Complaint does not even include a section outlining her causes of action.[96]  Instead, in the "Introduction" section of the Amended Complaint, Ms. Grigsby broadly asserts that "[t]his is a civil rights action," brought under 42 U.S.C. § 2000e and 42 U.S.C. § 12101, "to recover damages against [PCSSD] for the unlawful discriminatory employment practices that [Ms.] Grigsby has been subjected to, all on account of her sex, disability, and in retaliation for having opposed discriminatory practices."[97]  The introduction section further relays that Ms. Grigsby is seeking relief under 42 U.S.C. § 1983, declaratory judgment under 28 U.S.C. § 2201, and "equitable relief and injunctive relief as well."[98]

On June 28, 2021, the Court held a hearing on PCSSD's Summary Judgment Motion.[99]  At the hearing, the Court asked Ms. Grigsby's counsel for clarification as to which specific claims are advanced in the Amended Complaint.  Ms. Grigsby's counsel stated that the Amended Complaint advances three claims: (1) a failure-to-promote claim on the basis of sex discrimination, (2) a failure-to-promote claim based on Ms. Grigsby's perceived disability, and (3) a failure-to-promote claim based on retaliation.[100]  Ms. Grigsby's counsel expressly conceded that these are the only three claims advanced in the Amended Complaint.[101]  Given this express concession, the Court will only address these three claims.

There is still a question about the scope of the three claims.  Specifically, are the failure-to-promote claims limited to PCSSD's decision to select Mr. Thomas for the Facilitator position

---

[95]  *See* Pl.'s Compl. (Doc. 1); Pl.'s Am. Compl. (Doc. 15).

[96]  Ms. Grigsby's Amended Complaint includes the following sections: Introduction; Jurisdiction; Parties; Facts; Procedural Requirement; Damages; and Jury Demand.  Pl.'s Am. Compl. (Doc. 15).

[97]  *Id.* at 1.

[98]  *Id.*

[99]  *See* Docs. 41 and 42.

[100]  June 28, 2021 Hr'g Tr. at 29-30.

[101]  *Id.* at 30.

instead of Ms. Grigsby?  Or do the failure-to-promote claims also encompass PCSSD's decision to not hire a second Facilitator?  At the summary judgment hearing, Ms. Grigsby's counsel argued that the failure-to-promote claims encompass both of these issues.[102]  In other words, Ms. Grigsby alleges that PCSSD discriminated or retaliated against her both by awarding Mr. Thomas (instead of her) the Facilitator position *and* by not giving her the second advertised Facilitator position. PCSSD contends that the Amended Complaint did not plead any claims relating to not filling an advertised second Facilitator position.[103]  As a result, PCSSD asserts that it was not put on notice of those allegations, and that the Court should not read them into the Amended Complaint.[104]

The Court agrees with PCSSD.  It is true that the Amended Complaint alleges, as a fact, that, "[i]n May 2018, [Ms. Grigsby] applied for one of two (2) advertised [F]acilitator's positions within the Department of Safety and Security."[105]  In context, however, it is readily apparent that this statement is merely background for the specific claims asserted—that choosing Mr. Thomas over Ms. Grigsby for the Facilitator position constituted unlawful discrimination and retaliation. The Amended Complaint continuously refers to the position (singular) that was awarded to Mr. Thomas as the basis for her claims.[106]  For example:

> 21. On August 30, 2018, the plaintiff learned that a lesser qualified male was awarded this position, which was awarded to Dave Thomas.
>
> 22. The Facilitator's role in Safety and Security acted as the manager of this department.
>
> 23. Dave Thomas had previously been by the PCSSD as a Captain with the district's security department.

---

[102] *Id.* at 40-46.

[103] *Id.* at 50.

[104] *Id.*

[105] Pl.'s Am. Compl. (Doc. 15) ¶ 20.

[106] *Id.* ¶¶ 21, 27, 28, 29, 30, 37.

24. During the Spring of 2018, Dave Thomas was informed that his position was being non-renewed.

25. After Mr. Thomas was non-renewed, the plaintiff began to work in a management capacity in the defendant's Safety and Security Department.

26. Despite the fact that Mr. Thomas' position had been non-renewed, he was kept in a temporary status, at his regular salary of approximately $70,000.00 per year, when per policy, he should have only been making $12.00 per hour.

27. The fact that Mr. Thomas was kept at his annual salary of $70,000.00, despite being in a temporary status, was designed to give him the advantage of being selected for the facilitator's position, was [sic] constitutes a preselection.

28. The plaintiff was not selected for the facilitator's position due to her sex, in violation of Title VII of the Civil Rights Act of 1964 (as amended).

29. Furthermore, the plaintiff was denied the facilitator's position on account of her perceived disability, in violation of the Americans with Disability Act (ADA).

30. Also, the plaintiff was not selected for the facilitator's position in retaliation to [sic] previously complaining about discrimination, in violation of Title VII of the Civil Rights Act of 1964 (as amended).

. . . .

37. On December 20, 2018, the plaintiff filed a Charge of Discrimination (No. 493-2019-00506) with the Equal Employment Opportunity Commission (EEOC), contending that she had been discriminated against in [the] terms and conditions of her employment with the defendant, when she was not selected for the facilitator's position that was given to Dave Thomas in August 2018, due to her sex and retaliation for having previously complaining [sic] about discrimination in violation of Title VII of the Civil Rights Act of 1964 (as amended), also due to her perceived disability, in violation of the American with Disabilities Act (ADA). (See Charge of Discrimination attached herein as Plaintiff's Exhibit "A").[107]

---

[107] *Id.* ¶¶ 21-30, 37.

Although Ms. Grigsby's December 2018 EEOC complaint noted that "one of the two positions was not filled," this was not echoed in the Amended Complaint.[108]  To the contrary, the Amended Complaint summarizes Ms. Grigsby's EEOC complaint as alleging discrimination and retaliation when she was not selected for the Facilitator position "that was given to Dave Thomas in August 2018."[109]  The summary makes no mention of the second, unfilled position.[110]

Moreover, Ms. Grigsby's Brief in Support of her Response to PCSSD's Motion for Summary Judgment strongly corroborates the conclusion that the Amended Complaint is not asserting claims regarding PCSSD's decision not to fill the second Facilitator position.[111] Nowhere in her brief can the Court find any suggestion of such a claim or any argument that summary judgment should be denied because of this second unfilled Facilitator position.

The Court concludes that the failure-to-promote claims as pleaded in the Amended Complaint relate to the Facilitator position (singular) filled by Mr. Thomas.  Under Federal Rule of Civil Procedure 8(d), "[e]ach allegation" in a pleading "must be simple, concise, and direct." And the Court must construe the pleadings "so as to do justice."[112]  Here, it is clear that the pleadings were not meant to raise claims regarding the second advertised Facilitator position and did not put PCSSD on notice of such claims.  It would be entirely unfair to, in essence, allow these claims to be raised for the first time at a summary judgment hearing.

## I.    Failure to Promote – Sex Discrimination

Ms. Grigsby alleges that PCSSD did not promote her to the Facilitator position "due to her

---

[108] Ex. 7 to Def.'s Mot. for Summ. J. (Doc. 26-7) at 2.

[109] *Id.* ¶ 37.

[110] *Id.*

[111] Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. (Doc. 33).

[112] FED. R. CIV. P. 8(e).

sex."[113]   Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ."[114]   It is equally unlawful for an employer "to limit, segregate, or classify [its] employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect [her] status as an employee, because of such individual's . . . sex . . . ."[115]   To survive a motion for summary judgment on a discrimination claim, "a plaintiff must either present admissible evidence directly indicating unlawful discrimination, or create an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)."[116]

Ms. Grigsby has not presented any direct evidence of sex discrimination in PCSSD's hiring process.  Thus, the *McDonnell Douglas* burden-shifting framework applies.[117]

> Under this framework, a plaintiff must first establish a prima facie case of discrimination.  Then, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action.  If the defendant meets this burden, then the burden shifts back to the plaintiff to produce sufficient admissible evidence that creates a genuine issue of material fact regarding whether defendant's proffered nondiscriminatory justification is merely pretextual for intentional discrimination.[118]

### A.  Step One – Prima Facie Case

Ms. Grigsby has established a prima facie failure-to-promote claim.  To establish a prima

---

[113] Pl.'s Am. Compl. (Doc. 15) ¶ 28.

[114] 42 U.S.C. § 2000e-2(a)(1).

[115] 42 U.S.C. § 2000e-2(a)(2).

[116] *Carter v. Pulaski Cty. Special Sch. Dist.*, 956 F.3d 1055, 1058 (8th Cir. 2020) (quoting *Macklin v. FMC Transp., Inc.*, 815 F.3d 425, 427 (8th Cir. 2016)).

[117] *Pribyl v. Cty. of Wright*, 964 F.3d 793, 796 (8th Cir. 2020).

[118] *Id.* (internal citations omitted).

facie failure-to-promote claim, a plaintiff must show that: (1) she was a member of a protected group; (2) she was qualified and applied for a promotion to a position for which the employer was seeking applicants; (3) she was not promoted; and (4) similarly situated employees, not part of the protected group, were promoted instead.[119]  Ms. Grigsby has shown that she is a member of a protected group.  She was minimally qualified for the Facilitator position and she applied for the Facilitator position.  But Ms. Grigsby did not receive the promotion.  Instead, an employee outside of the protected group was promoted.  Ms. Grigsby has therefore created a rebuttable presumption of discrimination.[120]

### B.  Step Two – Nondiscriminatory Reason

PCSSD has rebutted the presumption of discrimination.  To rebut the presumption of discrimination, a defendant must articulate a legitimate, nondiscriminatory reason for its conduct.[121]  "The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence."[122]

PCSSD asserts that Ms. Grigsby did not receive the promotion because she was not the most qualified applicant.[123]  PCSSD attached to its Motion for Summary Judgment the interview scoring sheets from the interviews for the Facilitator position.[124]  The scoring sheets indicate that three of the four interviewers viewed Mr. Thomas as the superior applicant to Ms. Grigsby.[125]  And

---

[119] *E.g.*, *Austin v. Minn. Min. & Mfg. Co.*, 193 F.3d 992, 995 (8th Cir. 1999).

[120] *Watson v. McDonough*, 996 F.3d 850, 854 (8th Cir. 2021).

[121] *Id.*

[122] *Torgerson*, 643 F.3d at 1047 (quoting *Floyd v. State of Missouri Dep't of Soc. Servs., Div. of Fam. Servs.*, 188 F.3d 932, 936 (8th Cir. 1999)).

[123] Def.'s Br. in Supp. of Mot. for Summ. J. (Doc. 27) at 5.

[124] Ex. 13 to Def.'s Mot. for Summ. J. (Doc. 26-13).

[125] *Id.* at 2.

the remaining interviewer merely considered Ms. Grigsby and Mr. Thomas equally qualified for the position.[126]  None of the interviewers considered Ms. Grigsby to be a superior option over Mr. Thomas.[127]  Thus, a multi-racial committee composed of two males and two females determined that Mr. Thomas was more qualified for the Facilitator position than Ms. Grigsby.

All the record evidence supports the committee's determination.[128]  It is undisputed that the Facilitator positions were created to replace the Coordinator positions.  And it is undisputed that Mr. Thomas held a Coordinator position for five years prior to the position being non-renewed.  During that entire time, Mr. Thomas was Ms. Grigsby's superior.  Of his fifteen "Performance Responsibilities" as a Coordinator, thirteen of them overlap with a Facilitator's "Performance Responsibilities."  In contrast, at best, Ms. Grigsby acted as an interim Coordinator for two months while school was out for the summer.  Outside of her interim stint as Coordinator, Ms. Grigsby worked as an Administrative Sergeant.  Only two of her "Performance Responsibilities" as an Administrative Sergeant overlapped with the Facilitator position's "Performance Responsibilities."[129]  Because PCSSD has shown a legitimate, nondiscriminatory reason for its conduct, PCSSD has rebutted the presumption of discrimination.[130]

---

[126] *Id.*

[127] *Id.*

[128] In her deposition testimony, Ms. Grigsby says that she was more qualified for the Facilitator position than was Mr. Thomas.  Ex. 1 to Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. (Doc. 33-1) at 26.  This sort of self-serving statement, without any real support, is not enough to create a genuinely disputed issue of fact.

[129] PCSSD also notes that Ms. Grigsby's integrity and work ethic had been recently called into question by Doctor Clayton Riley.  *See supra* note 20.  On May 22, 2018, Doctor Riley reported that Ms. Grigsby's functional capacity could not be determined because Ms. Grigsby had not put forth a reliable effort during her examinations.  *Id.*  Doctor Riley explained that it was "impossible for [him] to assess [Ms. Grigsby's] condition and progress" due to Ms. Grigsby's lack of effort, and that Ms. Grigsby failed to attend associated medical examinations.  *Id.*  The record does not state whether the interview committee was aware of Doctor Riley's report, or whether the interview committee knew about Ms. Grigsby's injury at all.

[130] *Watson*, 996 F.3d at 854.

### C.  Step Three – Pretext

Ms. Grigsby has failed to show that PCSSD's nondiscriminatory reason is mere pretext. An employee may demonstrate pretext in two ways.  She may show that it is more likely that discriminatory animus motivated the employer's decision, or she may show that the employer's explanation is unworthy of credence because it has no basis in fact.[131]  "Either route amounts to showing that a prohibited reason, rather than the employer's stated reason, actually motivated" the employer's conduct.[132]

Ms. Grigsby argues that PCSSD's explanation is pretextual because it relies on scores derived from subjective interview criteria.  Ms. Grigsby is correct that some (maybe even most) of the interview criteria was subjective in nature.  But an "assessment of a particular employee's performance is necessarily subjective."[133]  And "[e]mployers are entitled to compare applicants' performance during interviews."[134]  "[W]here the employer does not rely exclusively on subjective criteria, but also on objective criteria, the use of subjective considerations does not give rise to an inference of discrimination."[135]

The interview committee did not rely on subjective criteria alone.  For example, the interview committee considered each candidates' education and experience,[136] both of which the Eighth Circuit has clearly categorized as objective criteria.[137]  And to the extent subjective criteria

---

[131] *Rooney*, 878 F.3d at 1117.

[132] *Id.*

[133] *Hilt v. St. Jude Med. S.C., Inc.*, 687 F.3d 375, 381 (8th Cir. 2012) (quoting *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 976 (8th Cir. 2012)).

[134] *Hunter v. United Parcel Serv., Inc.*, 697 F.3d 697, 705 (8th Cir. 2012) (citing *Tyler v. Univ. of Ark.*, 628 F.3d 980, 989 (8th Cir. 2011)).

[135] *Id.* (citing *Wingate v. Gage Cty. Sch. Dist., No. 34*, 528 F.3d 1074, 1080 (8th Cir. 2008)).

[136] Ex. 17 to Def.'s Mot. for Summ. J. (Doc. 26-17); Ex. 5 to Def.'s Reply to Pl.'s Resp. (Doc. 34-5).

[137] *Power v. Univ. of N. Dakota Sch. of L.*, 954 F.3d 1047, 1053 (8th Cir. 2020).

was used, the interviews each consisted of the same committee and applied the same scoring rubric.[138]   Additionally, it is undisputed that PCSSD "set forth objective minimum requirements" for the Facilitator position.[139]   In particular, to be qualified for the Facilitator position, an applicant must have been a college graduate or possessed related experience or training, have had a minimum of five years' experience in law enforcement or security, have had supervisory experience, and have a valid driver's license.[140]   PCSSD necessarily considered Ms. Grigsby's objective qualifications in determining to interview her for the position.[141]   Accordingly, the use of subjective interview criteria does not itself give rise to an inference of discrimination.[142]

Ms. Grigsby takes particular issue with Curtis Johnson's scores.  She asserts that, based on the scoring, "it was apparent that Mr. Johnson preferred Dave Thomas over Wanda Grigsby."[143]   But Mr. Thomas scored higher than Ms. Grigsby even without Mr. Johnson's scores.  And more importantly, there is nothing unlawful with Mr. Johnson preferring Mr. Thomas over Ms. Grigsby. The Eighth Circuit has been clear that "it is not unlawful for an employer to make 'employment decisions based upon poor job performance, erroneous evaluations, personal conflicts between

---

[138] Ex. 17 to Def.'s Mot. for Summ. J. (Doc. 26-17); Ex. 5 to Def.'s Reply to Pl.'s Resp. (Doc. 34-5).  *See Torgerson*, 643 F.3d at 1050 (emphasizing that each interview consisted of the same panel and same questions); *Elliott v. Montgomery Ward & Co.*, 967 F.2d 1258, 1263 (8th Cir. 1992) (noting that the evaluation process was uniformly applied; each applicant was subject to the same performance reviews and evaluated by the same manager).

[139] *Pribyl*, 964 F.3d at 796.

[140] Ex. 10 to Def.'s Mot. for Summ. J. (Doc. 26-10) at 1.

[141] *Pribyl*, 964 F.3d at 796 ("It is undisputed that the County set forth objective minimum requirements in its NeoGov application and only the applicants who met those requirements were interviewed.  As such, the County considered Pribyl's objective qualifications when it granted her an interview.").

[142] At the summary judgment hearing, Ms. Grigsby's counsel argued that PCSSD has a history of racial discrimination, which, when coupled with the subjective interview criteria, creates an inference of discrimination.  June 28, 2021 Hr'g Tr. at 36-37.  There is no record evidence on this point.  In any event, a general reference to a history of *racial* discrimination does not give rise to an inference of *sex* or *disability* discrimination.  Indeed, historical and statistical evidence of a pattern of discriminatory practices must involve similarly situated persons, an appropriate sample size, and statistically significant findings.  *See, e.g.*, *Carter v. St. Louis Univ.*, 167 F.3d 398, 402 (8th Cir. 1999); *Goetz v. Farm Credit Servs.*, 927 F.2d 398, 405 (8th Cir. 1991); *Bell v. Bolger*, 708 F.2d 1312, 1321 (8th Cir. 1983).

[143] Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. (Doc. 33) at 15.

employees, or even unsound business practices,' as long as these decisions are not the result of discrimination based on an employee's membership in a protected class."[144]

Even assuming that Mr. Johnson did prefer Mr. Thomas over Ms. Grigsby, there are no record facts to suggest that his preference was based on sex.  A closer look at Mr. Johnson's ratings reveals no sexual bias.  Mr. Johnson rated Sandra Arnold, one of the other female candidates, higher than did all of the other committee members and higher than or equal to all of the male candidates except for Mr. Thomas.[145]  And Mr. Johnson rated Ms. Grigsby higher than two of the male candidates.[146]  It's true that Mr. Johnson expressed concerns about Ms. Grigsby's interview. But Ms. Grigsby herself admitted that, during her brief stint as Coordinator, she "did a wrong thing by Mr. Johnson" by hiring a "temp worker" that "Mr. Johnson knew . . . outside of PCSSD."[147] Despite Ms. Grigsby's error, Mr. Johnson still credited Ms. Grigsby's "[s]olid experience" and acknowledged that Ms. Grigsby took the lead in the absence of the Coordinator position.[148]

Ms. Grigsby has not produced any evidence that would allow a rational juror to conclude that it is more likely that discriminatory animus motivated PCSSD's decision, or that PCSSD's explanation is unworthy of credence because it has no basis in fact.[149]  So no rational juror could conclude that PCCSD's legitimate, nondiscriminatory reason for its conduct was a pretext for discrimination.   PCSSD is entitled to judgement as a matter of law on Ms. Grigsby's sex discrimination claim.

---

[144] *Evers v. Alliant Techsystems, Inc.*, 241 F.3d 948, 959 (8th Cir. 2001) (internal citation omitted).

[145] Mr. Johnson scored Ms. Sandra Arnold a 22 out of 24.  Ex. 13 to Def.'s Mot. for Summ. J. (Doc. 26-13) at 2.  The rest of the committee scored Ms. Arnold a 20, 21, and 19, respectively.  *Id.*  Mr. Johnson scored Ms. Arnold higher than Mr. Gary Burton, Mr. Lonnie Murphy, and Mr. Cranton Murphy, and equal to Mr. Tracy Bunting and Mr. Gerald Tatum.  *Id.*

[146] Mr. Johnson scored Ms. Grigsby higher than Mr. Lonnie Murphy and Mr. Cranton Murphy.  *Id.*

[147] Ex. 1 to Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. (Doc. 33-1) at 38.

[148] Ex. 17 to Def.'s Mot. for Summ. J. (Doc. 26-17) at 8.

[149] *Rooney*, 878 F.3d at 1117.

## II.     Failure to Promote – ADA Discrimination

Ms. Grigsby also alleges that she was not selected for the Facilitator position "on account of her perceived disability."[150]   The ADA prohibits covered employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, [or] the hiring, advancement, or discharge of employees . . . ."[151]   Like sex discrimination and retaliation, disability discrimination may be shown by either direct or indirect evidence.[152]   "Direct evidence includes 'evidence of conduct or statements by persons involved in the decision[-]making process that may be viewed as directly reflecting the alleged discriminatory attitude,' where it is sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor."[153]   In the absence of direct evidence, the *McDonnell Douglas* burden-shifting framework applies.[154]

Ms. Grigsby contends that she has demonstrated direct evidence of discrimination because Mr. Brewer indicated to her his belief that, had a second Facilitator been selected, Ms. Grigsby would not have been chosen because her arm was "messed up."[155]   Even assuming this statement is true, Ms. Grigsby has not identified any evidence indicating that Mr. Brewer was "involved in

---

[150] Pl.'s Am. Compl. (Doc 15) ¶ 29.

[151] 42 U.S.C. § 12112(a).

[152] *Lipp v. Cargill Meat Sols. Corp.*, 911 F.3d 537, 543 (8th Cir. 2018).

[153] *Id.* (quoting *Schierhoff v. GlaxoSmithKline Consumer Healthcare*, L.-P., 444 F.3d 961, 966 (8th Cir. 2006)).

[154] *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 755 (8th Cir. 2016).

[155] The Court is skeptical of Ms. Grigsby's testimony on this point.  For one thing, as already stated, it is unclear whether this statement came directly from Mr. Brewer, whether another security officer told Ms. Grigsby that Mr. Brewer said she was not a viable option given her injury, or both.  *Compare* Ex. 1 to Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. (Doc. 33-1) at 20, *with* Ex. 1 to Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. (Doc. 33-1) at 46.  For another thing, Ms. Grigsby testified that it was Mr. Brewer who appointed her as an interim Coordinator once the Coordinator positions were non-renewed.  Given the undisputed similarities between the job responsibilities of the Facilitator position and the Coordinator position, it appears that Mr. Brewer had little to no concerns regarding Ms. Grigsby's injured arm with respect to fulfilling the duties of that position.  Nevertheless, the Court views the facts in the light most favorable to Ms. Grigsby.

the decision[-]making process" or had any insight into the decision-making process.[156]  And it is undisputed that Mr. Brewer was not part of the interview committee.  Although it is true that Mr. Brewer was the Executive Director of Human Resources at the time that the Facilitator position was filled, that fact alone does not necessitate his involvement in the decision-making process.[157]  Accordingly, Mr. Brewer's statement alone is not "sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor."  Once again, the *McDonnell Douglas* burden-shifting framework applies.[158]

### A.  Step One – Prima Facie Case

Ms. Grigsby has established a prima facie claim of disability discrimination.  To establish a prima facie claim of discrimination under the ADA, a plaintiff must show (1) that she was disabled as defined by the ADA, (2) that she was qualified to perform the essential functions of her job with or without reasonable accommodation, and (3) that she suffered an adverse employment action because of her disability.[159]

PCSSD does not dispute that Ms. Grigsby was disabled within the meaning of the ADA.[160]  And PCSSD concedes that Ms. Grigsby suffered adverse employment action when she was not promoted to the Facilitator position.[161]  But PCSSD contends that Ms. Grigsby failed to show that

---

[156] It is also worth reiterating that, as explained above, the failure-to-promote claims as pleaded in the Amended Complaint relate only to the Facilitator position (singular) filled by Mr. Thomas.  *See supra* pp. 10-14.  Mr. Brewer's alleged comment regarding the second, unfilled position is tenuous at best.

[157] Mr. Brewer and the "Administrator or Department Manager" signed a form (which was largely incomplete) entitled the "Support Staff Personnel Recommendation Form."  Ex. 2 to Def.'s Reply to Pl.'s Resp. (Doc. 34-2) at 2.  Mr. Brewer's signature was not dated, and Ms. Grigsby has not provided any context to the form sufficient to suggest that Mr. Brewer's undated signature constituted his involvement in the decision-making process.  *Id.*

[158] *See, e.g.*, *Oehmke*, 844 F.3d at 755.

[159] *Id.*

[160] Def.'s Br. in Supp. of Mot. for Summ. J. (Doc. 27) at 19 ("Generously assuming that Grigsby's shoulder injury qualified her as disabled under the ADA . . . .").

[161] *Id.*

she was qualified to perform the essential functions of the Facilitator position with or without reasonable accommodation.[162]  In response, Ms. Grigsby argues that PCSSD failed to provide her a reasonable accommodation.[163]

Ms. Grigsby's argument is misdirected.  Whether PCSSD should have accommodated Ms. Grigsby is different—both substantively and legally—than whether Ms. Grigsby could perform the essential functions of the open job with or without reasonable accommodation.  The Amended Complaint alleges that Ms. Grigsby was not promoted on account of her perceived disability.  It does not allege (or even imply) that PCSSD failed to accommodate her disability.  Ms. Grigsby may not raise that claim for the first time on summary judgment.

While Ms. Grigsby's argument is misdirected, PCSSD's argument is wrong.  Ms. Grigsby served as an interim Coordinator after the Coordinator positions were non-renewed.  Given the undisputed similarities between the job responsibilities of the Facilitator position and Coordinator position, it stands to reason that, for nearly two months, Ms. Grigsby performed most of the essential functions of the Facilitator position.  Additionally, Loria Bryant, Roberto Carrillo, and Curtis Johnson each assessed Ms. Grigsby's ability to implement the Facilitator job description as "superior," which constituted a perfect score on that factor.[164]  And Cynthia D'Abadie assessed Ms. Grigsby's ability to implement the Facilitator's job description as "above average."[165]

Ms. Grigsby has shown with sufficient evidence that she was qualified to perform the essential functions of the Facilitator position with or without reasonable accommodation.  As a result, Ms. Grigsby has successfully established a prima facie claim of discrimination under the

---

[162] *Id.*

[163] Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. (Doc. 33) at 18.

[164] Ex. 17 to Def.'s Mot. for Summ. J. (Doc. 26-17) at 5-6, 8.

[165] *Id.* at 7.

ADA.

### B.  Step Two – Nondiscriminatory Reason

PCSSD has rebutted the presumption of discrimination.  Indeed, for the same reasons identified above, PCSSD has articulated a legitimate, nondiscriminatory reason for its conduct.  In short, PCSSD has identified evidence that supports its explanation that it did not promote Ms. Grigsby because Mr. Thomas was more qualified.

### C.  Step Three – Pretext

Ms. Grigsby failed to argue that PCSSD's nondiscriminatory reason is pretextual.[166]  Even if she had, there is no record evidence showing that a prohibited reason, rather than PCSSD's stated reason, actually motivated PCSSD's conduct.[167]  Essentially, the analysis in Section I.C. above is also applicable here.  Accordingly, Ms. Grigsby has failed to show the existence of specific facts supported by sufficient probative evidence that would allow a rational juror to find in her favor. PCSSD is therefore entitled to judgment as a matter of law on Ms. Grigsby's failure-to-promote claim under the ADA.

---

[166] Ms. Grigsby hangs her entire ADA response on the existence of direct evidence.  Pl.'s Br. in Supp. of Resp. to Def.'s Mot. for Summ. J. (Doc. 33) at 18-23.  Consequently, she did not address the *McDonnell Douglas* framework with respect to the ADA claim.

[167] The only potential record evidence in this case relating to any discrimination on the basis of Ms. Grigsby's injury involves Mr. Brewer, Mr. Thomas, and Mr. Bowers.  But Ms. Grigsby does not argue that any of these individuals were involved in or influenced the interview or selection process.  And none of the record evidence suggests that they were.  Mr. Brewer stated his belief that, even if they had filled the second Facilitator position, Ms. Grigsby would not have been selected because of her injured arm.  But as explained above, there is no record evidence that Mr. Brewer had any involvement in or insight into the decision-making process.  Ms. Grigsby alleges that Mr. Thomas mocked her injury and retaliated against her by moving her desk and assigning her typing duties.  But all of these allegations transpired after he was selected for the Facilitator position, not before.  There is no indication whatsoever that Mr. Thomas—an applicant for the position himself—had any influence over the selection process for the Facilitator position.  Finally, Mr. Bowers retired from PCSSD months before the interviews were conducted and the Facilitator position was filled.  There is no indication that Mr. Bowers had any involvement in filling the new Facilitator position.

### III.     Failure to Promote – Retaliation

Ms. Grigsby also alleges that PCSSD did not promote her because she filed an EEOC claim against her former supervisor, Bennie Bowers.[168]  Under Title VII, it is unlawful for an employer to discriminate against an employee who opposes an unlawful employment practice or who charges or participates in a discrimination investigation or proceeding against her employer.[169]  To survive summary judgment, a plaintiff must either (1) establish admissible evidence directly indicating unlawful retaliation or (2) create an inference of unlawful retaliation under the burden shifting framework set forth in *McDonnell Douglas*.[170]

Ms. Grigsby has not pointed the Court to any evidence directly indicating unlawful retaliation.  Thus, once again, the *McDonnell Douglas* burden-shifting framework applies.  A prima facie case of retaliation is established if the plaintiff shows (1) that she engaged in protected activity, (2) a reasonable employee would have found the retaliatory conduct materially adverse, and (3) the materially adverse conduct was causally linked to the protected activity.[171]

The first element is met.  Ms. Grigsby clearly engaged in protected activity when she filed her initial EEOC complaint against Mr. Bowers.  The second element is also met.  A reasonable employee would find the denial of a promotion to be materially adverse.  But Ms. Grigsby has not satisfied the final element of a prima facie case of retaliation—causation.

A causal relationship exists where the alleged retaliatory motive was the but-for cause of

---

[168] Pl.'s Am. Compl. (Doc. 15) ¶ 30.  The Amended Complaint also suggests that PCSSD retaliated against Ms. Grigsby for filing a Workers' Compensation claim.  *Id.* ¶ 31.  That claim was not filed with the EEOC and was not administratively exhausted.  Additionally, to the extent filing for Workers' Compensation could count as protected activity, that activity bears even less of a temporal relationship to the alleged discriminatory conduct than does Ms. Grigsby's original EEOC complaint.  As a result, it fails to satisfy the third element of a prima facie case for the same reasons as those described below.

[169] 42 U.S.C. § 2000e-3(a).

[170] *Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799, 805 (8th Cir. 2019).

[171] *Id.*

the adverse action.[172]  Direct evidence on this point is seldom available.[173]  Instead, plaintiffs often

rely on indirect evidence, such as "evidence establishing an inference of retaliatory animus through

temporal proximity of the two events."[174]  But a mere coincidence of timing is rarely sufficient to

satisfy the element.[175]  Indeed, the Eighth Circuit has "uniformly held that the temporal proximity

must be 'very close'" to satisfy the element without additional evidence.[176]

Although the Eight Circuit has not drawn a definitive line, it has clearly "recognized that

'[m]ore than two months is too long to support a finding of causation without something more,'"[177]

and that even a two-week interval is barely sufficient to establish causation.[178]  "As more time

passes between the protected conduct and the retaliatory act, the inference of retaliation becomes

weaker and requires stronger alternate evidence of causation.  The inference vanishes altogether

when the time gap between the protected activity and the adverse employment action is measured

in months."[179]

As established above, Ms. Grigsby filed her first EEOC complaint on April 3, 2018.  Her

claim reached full resolution on June 19, 2018.  On August 29, 2018—nearly five months after

---

[172] *Williams v. United Parcel Serv., Inc.*, 963 F.3d 803, 807 (8th Cir. 2020).

[173] *Tyler*, 628 F.3d at 986.

[174] *Id.* (citing *Buytendorp v. Extendicare Health Servs., Inc.*, 498 F.3d 826, 836 (8th Cir. 2007)).

[175] *See, e.g.*, *Turner v. Gonzales*, 421 F.3d 688, 697 (8th Cir. 2005).

[176] *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 866 (8th Cir. 2006) (applying the "very close" standard to FLMA retaliation); *see also Lors v. Dean*, 746 F.3d 857, 865 (8th Cir. 2014) (applying the "very close" standard to ADA retaliation); *Muor v. U.S. Bank Nat. Ass'n*, 716 F.3d 1072, 1078 (8th Cir. 2013) (applying the "very close" standard to Title VII retaliation); *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1022 (8th Cir. 2011) (same); *Tyler*, 628 F.3d at 986 (same).

[177] *Lors*, 746 F.3d at 866 (quoting *Sisk v. Picture People, Inc.*, 669 F.3d 896, 900 (8th Cir. 2012)).

[178] *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002).

[179] *Tyler*, 628 F.3d at 986 (internal citation omitted) (citing *Littleton v. Pilot Travel Ctrs., LLC*, 568 F.3d 641, 645 (8th Cir. 2009) (a temporal gap of seven months was "not sufficiently contemporaneous" to indicate a causal connection); *Recio v. Creighton Univ.*, 521 F.3d 934, 941 (8th Cir. 2008) (a six-month gap was too long to give rise to an inference of causal connection); *Lewis v. St. Cloud State Univ.*, 467 F.3d 1133, 1138 (8th Cir. 2006) ("We have held that an interval as brief as two months did not show causation for purposes of establishing a retaliation claim and that a two-week interval was 'sufficient, but barely so.'")).

Ms. Grigsby filed her first EEOC complaint, and well over two months after the complaint was fully resolved—Mr. Thomas was selected for the Facilitator position.  PCSSD argued in its summary judgment briefing that this timeline "completely dismantles [Ms.] Grigsby's causal connection argument."[180]   At the summary judgment hearing, however, PCSSD walked this argument back.[181]  PCSSD conceded that the time between Ms. Grigsby's protected activity and the alleged retaliatory conduct was relatively close.[182]  But PCSSD maintained that the timeline was still not close enough for a jury to infer a causal connection without something more.[183]  The Court agrees.

When temporal proximity alone will not suffice, the causation requirement can be satisfied by showing a pattern of escalating adverse actions that occurred very shortly after the protected activity.[184]  Ms. Grigsby has not identified any such pattern of adverse actions.[185]  To the contrary, Ms. Grigsby acknowledges that shortly after filing and settling her original EEOC complaint, PCSSD entrusted Ms. Grigsby with the interim Coordinator position.  In other words, things

---

[180] Def.'s Br. in Supp. of Mot. for Summ. J. (Doc. 27) at 11.  PCSSD further argues that the non-renewal of the Coordinator positions and the Director position constituted an intervening cause sufficient to break any temporal causal connection between the protected activity and the alleged retaliatory conduct.  June 28, 2021 Hr'g Tr. at 16.  It is true that PCSSD needed to fill a legitimately created vacancy, and it is true that PCSSD had a legitimate interest in filling the vacancy with the most qualified applicant.  While these facts weigh slightly in PCSSD's favor, they have little to no bearing on Ms. Grigsby's candidacy for the open positions.  Certainly not enough to constitute an intervening cause sufficient to break any existing degree of temporal connection.

[181] June 28, 2021 Hr'g Tr. at 16.

[182] *Id.*

[183] *Id.*

[184] *See, e.g.*, *Muor*, 716 F.3d at 1078 (citing *Bassett v. City of Minn.*, 211 F.3d 1097, 1105-06 (8th Cir. 2000), *abrogated on other grounds by Torgerson*, 643 F.3d 1031).

[185] The Amended Complaint alleges that PCSSD retaliated against Ms. Grigsby by subjecting her to unnecessary work, depriving her of access to company vehicles, and moving her out of her office and into the view of her new supervisor, Mr. Thomas.  Pl.'s Am. Compl. (Doc. 15) ¶¶ 32-33.  As far as the Court is aware, this conduct transpired after the alleged retaliatory failure-to-promote conduct.  Not before.  Regardless, none of these allegations rise to the level of adverse employment action.  Indeed, actionable retaliation cannot be trivial.  *Garrison v. Dolgencorp, LLC*, 939 F.3d 937, 943 (8th Cir. 2019).  Petty slights and minor annoyances may be upsetting or disappointing, but they are not actionable.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  Ms. Grigsby advanced no arguments (legal or otherwise) to the contrary.

improved for Ms. Grigsby between the time she engaged in protected activity and the alleged retaliatory conduct.

Ms. Grigsby has failed to establish a prima facie claim of retaliation.  And as explained in the several sections above, even if she had, PCSSD has identified a legitimate, nondiscriminatory reason for its conduct, and Ms. Grigsby has failed to produce evidence that would allow a rational juror to conclude that PCSSD's explanation is pretext for discrimination.[186]  Ms. Grigsby has therefore failed to demonstrate the existence of any specific facts supported by sufficient probative evidence that would permit a finding of unlawful retaliation "on more than mere speculation, conjecture, or fantasy."[187]  PCSSD is entitled to judgement as a matter of law on Ms. Grigsby's failure-to-promote retaliation claim.

## Conclusion

For all of the foregoing reasons, PCSSD's Motion for Summary Judgment is GRANTED. Judgement will be entered in PCSSD's favor.

IT IS SO ORDERED this 14th day of July 2021.

LEE P. RUDOFSKY
UNITED STATES DISTRICT COURT

---

[186] *See supra* pp. 16-20; *see also Kempf v. Hennepin Cty.*, 987 F.3d 1192, 1196 (8th Cir. 2021) ("To succeed, she must both discredit the County's explanation for her termination and 'show the circumstances permit drawing a reasonable inference that the real reason for [that action] was retaliation.'") (quoting *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 918 (8th Cir. 2007)).

[187] *Donathan*, 861 F.3d at 739 (quoting *Mann*, 497 F.3d at 825); *see also Anderson*, 477 U.S. at 255.